STATE OF NORTH CAROLINA v. GEORGE JUNIOR JENNINGS

No. 34

(Filed 6 January 1970)

**1. Homicide § 21—  second-degree murder — sufficiency of evidence**

   Evidence of defendant's guilt of murder in the second degree *held* sufficient to be submitted to the jury.

**2. Homicide § 5—  murder in the second degree — definition**

   Murder in the second degree is the unlawful killing of a human being with malice, but without premeditation and deliberation.

**3. Homicide § 14—  presumptions from use of deadly weapon — unlawful killing — malice**

   Where there is plenary evidence in second-degree murder prosecution that the deceased died from a wound intentionally inflicted by defendant with a rifle, the presumptions arise that the killing was unlawful and that it was done with malice.

**4. Homicide § 14—  burden of proof — self-defense and mitigation**

   It is incumbent upon defendant to satisfy the jury that the homicide was committed without malice, so as to mitigate it to manslaughter, or that the homicide was justified on the ground of self-defense.

**5. Homicide § 27—  instructions on manslaughter — sufficiency of evidence**

   Instruction, in second-degree murder prosecution, which would allow the jury to find defendant guilty of manslaughter if it found that he had killed the deceased in sudden passion or heat of blood, *held* justified by facts which would allow the inference that deceased approached defendant with a pistol pointed at him on the same day that defendant and deceased had been engaged in an altercation.

**6. Criminal Law § 113—  instructions — matters not in evidence**

   It is error for the trial judge to charge on matters which materially affect the issue when they are not supported by the evidence.

**7. Homicide § 27— instructions on manslaughter — "heat of passion or blood"**

The terms "heat of passion" or "heat of blood" as used in instructions on manslaughter are synonymous.

**8. Homicide § 6— mitigation of homicide — passion of terror**

When there are circumstances strongly calculated to excite the passion of terror, a homicide may be mitigated from murder to manslaughter.

**9. Homicide § 28— instruction on self-defense — explanation of "without fault" and "free from blame"**

Where the defendant in a second-degree murder prosecution had been engaged for a period of years in improper conduct with deceased's wife, which, in the eyes of an average juror, would tend to fix him with blame and fault in the shooting of deceased, the trial court, at defendant's request, should have defined and explained the meaning of the words "without fault" and "free from blame" in its instructions to the jury on the law of self-defense, such explanation being necessary to relate properly defendant's conduct to the time and place of the homicide and to dispel the idea that defendant's right of self-defense was precluded solely by reason of his prior improper association with the wife of deceased.

**10. Criminal Law § 113— instructions — words of common usage — definition**

It is not error for the court to fail to define and explain words of common usage in the absence of a request for special instructions.

**11. Homicide § 9— self-defense — defendant's immoral conduct**

The fact that defendant has previously been guilty of immoral conduct or wrongful acts, or has had past difficulties with the decedent, does not, standing alone, deprive defendant of his right of self-defense.

**12. Homicide § 9— self-defense — requirement that defendant be free from fault**

The requirement that a defendant must be free from fault in bringing on the difficulty before he can have the benefit of the doctrine of self-defense ordinarily means that he himself must not have precipitated the fight by assaulting decedent or by inciting in him the reaction which caused the homicide.

**13. Homicide § 9— self-defense — free from fault — time and place of killing**

Whether the defendant is free from blame or fault will be determined by his conduct at the time and place of the killing, but this determination is not confined to the precise time of the fatal encounter.

**14. Homicide § 28— instruction on self-defense — use of force — omission of apparent necessity**

An instruction on self-defense that the defendant could use no more force than was reasonably necessary to repel an assault by deceased is erroneous in omitting the element of apparent necessity, and the error

is not cured by correct instructions on this point in other portions of the charge.

MOORE, J., took no part in the consideration or decision of this case.

HUSKINS, J., dissents.

ON Certiorari to the North Carolina Court of Appeals to review its decision, reported in 5 N.C. App. 132.

Defendant, George Junior Jennings, was indicted by a Guilford County Grand Jury for the murder of Willie Edward Gibson. Upon call of the case at the 9 December 1968 Criminal Session of Guilford Superior Court, the solicitor for the State elected to try defendant for murder in the second degree or manslaughter. Defendant entered a plea of not guilty.

The evidence offered in the case, in summary, tends to show:

Defendant had been "dating" the wife of Willie Gibson for a period of four or five years. Deceased and defendant had words about this relationship in the year 1967. On 17 July 1968, Jennings took Mrs. Gibson and her children to the home of a relative who lived two doors from her father, Lacy Clawson. She moved to her father's home on the following Friday. On Saturday, 20 July 1968, Jennings was traveling on Penny Road in Guilford County, allegedly returning from an attempt to pawn his loaded rifle, when Gibson blocked the road with his automobile, opened the door of defendant's automobile, cursed him and struck him in the face with some hard object. Jennings thereupon went to his home and told his wife that he was going over to see Willie and ask him why he had hit him. With the loaded rifle still in his possession, Jennings drove to the Clawson house, where he observed the automobile that Willie Gibson had been driving parked in the Clawson yard. He drove past once, then came back and stopped his automobile on Bundy Road, near the Clawson driveway. Willie Gibson came out of the house and paused near his automobile before proceeding towards defendant's car. The State's witnesses did not see Gibson obtain a pistol at that time, although there was evidence offered by defendant that deceased had obtained a 32 pistol and was pointing it toward defendant as he approached defendant's automobile. The evidence is in conflict as to who fired first. Gibson went to the rear of defendant's car and there was evidence that he shot through the rear window and that defendant fired several shots through the rear window. Gibson then ran across Bundy Road and over a low bank. Defendant Jennings got out of his automobile, squatted down and fired more shots at de-

ceased, who was still pointing his pistol toward defendant. Gibson then said, "Don't shoot me no more," and collapsed in the field. Defendant went to the field and then left and placed himself in police custody. The State offered medical evidence to the effect that deceased died as a result of a gunshot wound.

There was testimony that the pistol used by Gibson had been fired once and, because of malfunction, could not have been fired more than once. There was also evidence of threats by deceased against the life of defendant. A more detailed statement of facts may be found in the opinion of the North Carolina Court of Appeals.

The jury returned a verdict of guilty of manslaughter, and from the judgment rendered thereon defendant appealed to the North Carolina Court of Appeals. That Court found no error in the trial below and defendant filed petition for writ of certiorari to the North Carolina Court of Appeals to review its decision pursuant to G.S. 7A-31 (c) (1), (2) and (3). The petition for certiorari was allowed by order dated 29 August 1969.

*Attorney General Morgan and Staff Attorney Andrew A. Vanore, Jr., for the State.*

*Schoch, Schoch and Schoch, by Arch K. Schoch, Jr., for defendant.*

BRANCH, J.

**[1]** Defendant assigns as error the refusal of the trial court to grant his motion for nonsuit at the close of all the evidence.

**[1-4]** The State elected to prosecute defendant for second degree murder. Murder in the second degree is the unlawful killing of a human being with malice, but without premeditation and deliberation. *State v. Foust,* 258 N.C. 453, 128 S.E. 2d 889; *State v. Street,* 241 N.C. 689, 86 S.E. 2d 277. There was plenary evidence that deceased died from a wound intentionally inflicted by defendant with a rifle, thus creating the presumptions that the killing was unlawful and that it was done with malice. *State v. Meadows,* 272 N.C. 327, 158 S.E. 2d 638; *State v. Redfern,* 246 N.C. 293, 98 S.E. 2d 322. Upon the jury finding that deceased died from a wound intentionally inflicted by defendant with a rifle, it became incumbent upon defendant to satisfy the jury that the homicide was committed without malice so as to mitigate it to manslaughter or that the homicide was justified on the ground of self-defense. *State v. Redfern, supra; State v. Gordon,* 241 N.C. 356, 85 S.E. 2d 322. We hold that the Court of Appeals correctly overruled this assignment of error.

The reasoning and authorities cited by the Court of Appeals in overruling defendant's assignment of error relative to cross-examination of defendant as to previous criminal convictions, without limiting instructions, appear to be correct, and further discussion by us is not required.

[5-7] By his Assignment of Error No. 3, defendant contends that the trial judge erred in his instructions to the jury by allowing the jury to find defendant guilty of manslaughter if it found that he had killed the deceased "in sudden passion" or "heat of blood." Admittedly, it is error for the trial judge to charge on matters which materially affect the issues when they are not supported by the evidence. *State v. Knight,* 248 N.C. 384, 103 S.E. 2d 452; *State v. McCoy,* 236 N.C. 121, 71 S.E. 2d 921. However, if the instruction is based upon a state of facts presented by a reasonable view of the evidence produced at the trial, there is no prejudicial error. *State v. Wilson,* 104 N.C. 868, 10 S.E. 315. The terms "heat of passion" or "heat of blood," as used by the trial judge, are synonymous.

In Black's Law Dictionary (4th ed. 1951) at page 1281, we find the following definition:

"PASSION. In the definition of manslaughter as homicide committed without premeditation but under the influence of sudden 'passion,' this term means any of the emotions of the mind known as rage, anger, hatred, furious resentment, or terror, rendering the mind incapable of cool reflection. *Stell v. State,* Tex. Cr. App., 58 SW 75; *State v. Johnson,* 23 N.C. 362, 35 Am. Dec. 742; *Winton v. State,* 151 Tenn. 177, 268 SW 633, 637; *Collins v. State,* 88 Fla. 578, 102 So. 880, 882; *Commonwealth v. Flax,* 331 Pa. 145, 200 A. 632, 636."

In 1 Wharton, Criminal Law and Procedure § 275 (Anderson ed.) at page 584, it is stated:

"Passion is not limited to rage, anger, or resentment. It may be fear, terror, or, according to some decisions, 'excitement' or 'nervousness.' . . ."

[8] This Court has recognized that when there are circumstances strongly calculated to excite the passion of terror, a homicide may be mitigated from murder to manslaughter. *State v. Will,* 18 N.C. 121.

[5] The instant case presents facts which would allow the inference that deceased approached defendant with a pistol pointed at him on the same day that defendant and deceased had been engaged in another altercation. It is reasonable to infer from this evi-

dence that defendant might have become dominated by a sudden passion or rage, anger, fear or terror that caused him to inflict the fatal wound. In any event, it would seem that the instruction complained of was for defendant's benefit rather than to his prejudice, since it presented a ground upon which the homicide could have been reduced from murder in the second degree to manslaughter. We find no error prejudicial to defendant in this assignment of error.

[9, 10]    Defendant next contends that the trial court erred in its charge on self-defense in failing to define or further explain the words "without fault" and "free from blame" in bringing on the controversy, when defendant specifically requested such charge. The words "without fault" and "free from blame" are words of common usage and would ordinarily require no explanation to be understood. There are many cases in this jurisdiction which hold that it is not error for the court to fail to define and explain words of common usage in the absence of a request for special instructions. *State v. Hall,* 267 N.C. 90, 147 S.E. 2d 548; *State v. Godwin,* 267 N.C. 216, 147 S.E. 2d 890; *State v. Jones,* 227 N.C. 402, 42 S.E. 2d 465. Further, this Court has approved charges on self-defense which used these words or words so nearly identical as to be indistinguishable without further definition or amplification. *State v. De Mai,* 227 N.C. 657, 44 S.E. 2d 218; *State v. Robinson,* 213 N.C. 273, 195 S.E. 824; *State v. Parker,* 198 N.C. 629, 152 S.E. 890; *State v. Pollard,* 168 N.C. 116, 83 S.E. 167.

In *State v. Crisp,* 170 N.C. 785, 87 S.E. 511, Hoke, J., speaking for the Court, stated:

"In some of the decisions on the subject it has been stated as a very satisfactory test that this right of perfect self-defense will be denied in cases where, if a homicide had not occurred, a defendant would be guilty of a misdemeanor involving a breach of the peace by reason of the manner in which he had provoked or entered into a fight. Under our decisions such a position would exist: *a.* Whenever one has wrongfully assaulted another or committed a battery upon him. *b.* when one has provoked a present difficulty by language or conduct towards another *that is calculated and intended to bring it about. . . .* And in this connection, it is properly held that language may have varying significance from difference of time and circumstances, and the question is very generally for the determination of the jury." (Emphasis ours)

[11-13]    Likewise, it is our opinion that conduct towards another must be evaluated within the framework of the surroundings, cir-

cumstances and parties, including their previous relations and the then existing state of their feelings. However, the fact that a person has previously been guilty of immoral conduct or wrongful acts, or has had past difficulties with the decedent, does not, standing alone, deprive a defendant of his right of self-defense. 40 C.J.S., Homicide, § 119, at 990. The requirement that a defendant must be free from fault in bringing on the difficulty before he can have the benefit of the doctrine of self-defense ordinarily means that he himself must not have precipitated the fight by assaulting the decedent or by inciting in him the reaction which caused the homicide. Usually, whether the defendant is free from blame or fault will be determined by his conduct at the time and place of the killing. Yet the fault in bringing on a difficulty which will deprive him of the right of self-defense is not confined to the *precise* time of the fatal encounter, but may include fault so closely connected with the difficulty in time and circumstances as to be fairly regarded as operating to bring it on. 40 Am. Jur. 2d, Homicide, § 145, at 434.

[9]    Here, defendant had been engaged for a period of years in conduct with deceased's wife which, in the eyes of an average juror, would fix him with blame and fault, and under the particular facts of this case the court should have amplified and explained the meaning of "without fault" and "free from blame." We wish to make it crystal-clear that we do not intend to overrule the line of cases which have used the words "without fault" or "free from blame" without further definition when there was no request for further instruction. We emphasize that this opinion must be read in connection with the facts of the case. *Light Co. v. Moss,* 220 N.C. 200, 17 S.E. 2d 10. We conclude that upon the facts of the instant case, upon request of counsel, the court should have further clarified the charge so as to properly relate defendant's conduct to the time and place of the homicide and to dispel any idea that defendant's right of self-defense was precluded *solely* by reason of his prior improper association with the wife of deceased.

[14]    Defendant contends that the trial judge erred in his instructions on self-defense by instructing the jury that defendant could use no more force than was reasonably necessary without the further alternative "or apparently necessary." In his original instructions and again in additional instructions, given at the request of the jury, the trial judge charged as follows:

"Now, when you come to consider the plea of self-defense, you should ask yourselves these questions: No. One: At the time the fatal shot was fired by the defendant, if you find that

it was fired by him, that took the life of the deceased, Willie Gibson, was the defendant at a place where he had a right to be? Second: Was the defendant himself without fault in bringing on or entering into the encounter or difficulty with the deceased Willie Gibson? Third: Was the defendant unlawfully or feloniously assaulted by the deceased Willie Gibson? Four: Did the defendant believe and have reasonable grounds to believe that he was about to suffer death or great bodily harm at the hands of the deceased Willie Gibson? Five: Did the defendant act with ordinary firmness and prudence under the circumstances as they reasonably appeared to him, and under the belief that it was necessary to kill the deceased, Willie Gibson, in order to save his own life or to protect his person from enormous bodily harm? *Six: Did he use no more force than was reasonably necessary to repel the assault which he contends the deceased, Willie Gibson, was making upon him at the time the deceased, Willie Gibson, was killed?*" (Emphasis ours)

In the case of *State v. Francis*, 252 N.C. 57, 112 S.E. 2d 756, the defendant assigned as error this pertinent portion of the charge:

"So, in determining the degree of force one may use, the law permits a person to use such force as is reasonably necessary to protect himself, and he can even go to the extent of taking human life where it is necessary to save himself from death or great bodily harm, but if he uses more force than is reasonably necessary he is answerable to the law."

The court granted a new trial and stated:

"(2)  It is erroneous in that the court failed to charge the jury with respect to the use of such force as was necessary or *apparently necessary* to protect the defendant from death or great bodily harm. The plea of self-defense rests upon necessity, real or apparent."

Accord: *State v. Kirby*, 273 N.C. 306, 160 S.E. 2d 24; *State v. Hardee*, 3 N.C. App. 426, 165 S.E. 2d 43; *State v. Fowler*, 250 N.C. 595, 108 S.E. 2d 892; *State v. Goode*, 249 N.C. 632, 107 S.E. 2d 70; *State v. Rawley*, 237 N.C. 233, 74 S.E. 2d 620; *State v. Moore*, 214 N.C. 658, 200 S.E. 427. This unbroken line of decisions clearly indicates error in the charge.

The court, in several other places, charged correctly as to apparent necessity. It is apparent that the able judge was fully cognizant of the principles of law involved, but that he fell into the snare, on both these occasions, of using a stereotyped set of ques-

tions that have consistently caused confusion and error in charges. Nor can this error be cured because the court correctly instructed the jury in other portions of the charge. In the case of *State v. Johnson*, 184 N.C. 637, 113 S.E. 617, the trial judge, *inter alia*, charged:

> " 'In order to excuse the killing, on the plea of self-defense, it is necessary for the accused to show that he quit the combat before the mortal wound was given, or retreated or fled as far as he could with safety, and then, urged on by mere necessity, killed his adversary for the preservation of his own life.' "

Holding this portion of the charge to be error, the Court stated:

> "It was incorrect and material error to charge the jury that the prisoner must have killed the deceased from mere necessity, in order to excuse the homicide, Whether there was any actual necessity for killing the deceased in order to save his own life, or to prevent great bodily harm to him, makes no difference, provided, at the time, the prisoner believed, and had reason to believe, that from the facts and circumstances as they then appeared to him he was about to be killed, or to suffer some enormous bodily harm.
>
> .  .  .  .  .
>
> "It is true that the judge in this case did, in another part of his charge, give the correct instruction, but he did not retract the erroneous one and substitute the other in its place; and, therefore, the jury were left to conjecture as to which of the two essentially different principles applied to this case."

We also find the following statement in the case of *State v. Ellerbe*, 223 N.C. 770, 28 S.E. 2d 519:

> "It is contended on behalf of the State that, taking the charge contextually, there is no prejudicial error. We cannot so hold. An erroneous instruction upon a material aspect of the case is not cured by the fact that in other portions of the charge the law is correctly stated. This is especially applicable in the instant case, because the jury was instructed that, in order for the defendant to have the benefit of the principle of law, that is, of self-defense, he must show certain things, some of which he was not required to show under the facts and circumstances disclosed on this record, in order to have the jury consider his evidence on the plea of self-defense. It is impossible to determine on which of the instructions the jury acted."

See also: *State v. Fowler, supra; State v. Isley*, 221 N.C. 213, 19 S.E. 2d 875; *State v. Floyd*, 220 N.C. 530, 17 S.E. 2d 658; *State v.*

*Starnes,* 220 N.C. 384, 17 S.E. 2d 346; *State v. Mosley,* 213 N.C. 304, 195 S.E. 830; *State v. Johnson, supra.*

We do not deem it necessary to rule on the other assignments of error since these questions may not recur in a new trial.

The decision of the Court of Appeals is reversed and the cause is remanded to that Court with direction to award a new trial to be held in accordance with the principles herein stated.

Error and remanded.

HUSKINS, J., dissents.

MOORE, J., took no part in the consideration or decision of this case.