STATE OF NORTH CAROLINA v. JOHNNIE B. HANKERSON

No. 757SC268

(Filed 16 July 1975)

1. **Homicide § 21— exculpatory statements of defendant — introduction by State — sufficiency of evidence of murder**

    Defendant in a murder prosecution was not entitled to judgment as of nonsuit on the ground that the State introduced exculpatory statements of defendant which were not contradicted and by which the State was bound where the State's evidence tended to show that deceased died from a wound intentionally inflicted by defendant with a pistol, thus creating the presumption that the killing was unlawful and was done with malice, and thus placing upon defendant the burden of satisfying the jury that the killing was committed without malice so as to mitigate it to manslaughter or that it was justified on the ground of self-defense.

2. **Homicide § 28— not guilty by reason of self-defense — failure to instruct — additional instructions proper**

    Defendant was not prejudiced by the trial court's failure to include not guilty by reason of self-defense as a possible verdict in its final mandate to the jury where the court included such a charge in

---

State v. Hankerson

---

its additional instructions given the jury after they had deliberated for some time.

Judge ARNOLD dissenting.

APPEAL by defendant from *Webb, Judge*. Judgment entered 21 November 1974 in Superior Court, NASH County. Heard in the Court of Appeals 29 May 1975.

Defendant was charged with second degree murder and entered a plea of not guilty.

Evidence for the State tended to show the following facts. Gregory Ashe died 29 September 1974 as the result of a gunshot wound to the heart. On the night of 29 September 1974, Lorenzo Dancy, Wilbert Whitley, and the deceased, Gregory Ashe, left a dance hall and drove to a poolroom. Ashe was driving his car. Upon arrival at the poolroom, they discovered that it was closed. When Ashe was unable to start the car, Whitley announced that he was going home and began walking. Dancy and Ashe were also walking away from the car when Ashe said that he was going back to "crank" the car. Dancy indicated that he was going with Whitley. He yelled for Whitley to wait and then proceeded to walk behind Whitley. A gun fired, and Dancy heard Ashe exclaim that he was shot. A yellow and black Plymouth "Satellite" was observed pulling away at a fast rate of speed.

According to Dancy, it was difficult to find Ashe due to darkness. Around 12:00 o'clock that night, Ashe was discovered lying facedown in a field. A cigarette, which had been lit, was found in Ashe's hand.

After determining the identity of the owner of the Plymouth, police officers went to defendant's home, advised defendant of his rights, and proceeded to question him. At that time, defendant told Officer Reams that the subject had grabbed him and had tried to cut his throat. Officer Reams testified that defendant's car was searched and a knife was found on the seat to the right of the driver's seat. Also, blood was observed on the driver's side of the car, just behind the door. Officer Reams further testified that defendant gave him a shirt, showed him a grease spot on the shirt, and stated that was where he had been grabbed. On cross-examination, Officer Reams gave the following account of defendant's statements. Defendant was driving his Plymouth "Satellite" automobile near the poolroom when a man stopped him and asked for a light. Defendant gave the man the cigarette lighter from the dash of his automobile. After defendant had returned the lighter to its holder, the man

reached into the car and put a knife to defendant's throat and had a hand on defendant's chest. Defendant reached down, got a revolver from the car seat, and shot.

Several witnesses testified for the State that they had never seen the deceased with a knife like the one offered in evidence.

Defendant testified giving the following account of the incident. He was driving his Plymouth automobile slowly over a road containing large holes when someone asked him for a light. Through his car mirror, defendant could see two men. One of them walked up to the car and defendant reached over to the dash of the car, pushed in the cigarette lighter, and gave the lighter to him. Feeling his car move some, defendant looked and noticed the second man standing on the right-hand side of the car. As he turned back to his left, the first man reached into his car, seized defendant by the left shoulder, and put a knife to defendant's throat. According to defendant he felt the knife at his throat and grabbed his gun. He shot because the knife was around his neck. Defendant surmised that his assailant dropped the knife in the car. A number of witnesses testified concerning defendant's good character.

The jury found defendant guilty of second degree murder and from judgment imposing prison sentence, defendant appealed.

*Attorney General Edmisten, by Assistant Attorney General Claude W. Harris, and Assistant Attorney General Charles M. Hensey, for the State.*

*L. S. Diedrick, W. O. Rosser, and Roland Braswell, for defendant appellant.*

MARTIN, Judge.

[1] Defendant assigns as error the denial of his motions for judgment as of nonsuit. He earnestly argues that the State introduced in evidence exculpatory statements of defendant which were not contradicted or shown to be false by other facts or circumstances in evidence; that these exculpatory statements establish a complete defense—i.e. self-defense; that the State was bound by these statements; and that, consequently, defendant was entitled to judgment as of nonsuit.

There was plenary evidence that deceased died from a wound intentionally inflicted by defendant with a pistol, thus creating the presumption that the killing was unlawful and that it was done with malice. Upon the jury finding that deceased died from a wound intentionally inflicted by defendant with a pistol, it became incumbent upon defendant to satisfy the jury that the killing was committed without malice so as to mitigate it to manslaughter or that it was justified on the ground of self-defense. *State v. Jennings*, 276 N.C. 157, 171 S.E. 2d 447 (1970).

While the exculpatory statement of defendant introduced in State's evidence was competent to be considered on the motion to nonsuit, "it may not be regarded as conclusive if there be other evidence tending to throw a different light on the circumstances of the homicide." *State v. Bright*, 237 N.C. 475, 75 S.E. 2d 407 (1953). The State was not bound by the statement if other evidence offered pointed to a different conclusion and raised the reasonable inference from all the testimony that the shooting was intentional and unlawful. *State v. Bright, supra.*

Brief consideration of the evidence shows that the State's evidence did not make out a defense for defendant, and that there was sufficient evidence to carry the case to the jury.

Defendant admitted that he was at the scene of the crime and that he shot at someone. When Officer Reams went to the home of defendant to investigate, defendant stated that he was in the process of buying the gun which was used in the shooting and that he had returned the gun to its owner. In his testimony at trial, defendant admitted that he had not returned the gun and that it was in fact in the house at that time. Annie Hankerson, defendant's mother, testified that police officers asked her about the gun and that she got it from a drawer where defendant kept his personal things and gave it to them. Pursuant to defendant's statement that grease marks had been left on his shirt when the man had grabbed him, Officer Reams examined the hands of the deceased but found no grease. In addition, Officer Reams testified that the knife, which was found on the front seat of defendant's car, had some bark on it and looked like it had been cutting wood. According to Officer Reams, defendant worked at a lumber yard. Several witnesses testified that they had never seen the deceased with the knife. Furthermore, defendant left the scene, went home, and did not report

State v. Hankerson

to the police that he had been assaulted by someone with a knife. The motions for judgment as of nonsuit were properly denied.

[2] In assignment of error number six, defendant concedes that the trial court properly instructed the jury regarding the law of self-defense, but he contends that error was committed because of the court's failure to include not guilty by reason of self-defense as a possible verdict in its final mandate to the jury. Under the authority of *State v. Dooley*, 285 N.C. 158, 203 S.E. 2d 815 (1974), we would be required to sustain this assignment of error except that in the present case the trial court cured its error by giving additional instructions. After the jury had deliberated for some time, they returned for additional instructions, and the court specifically charged them as follows: "Also, I want to instruct you that the charge I gave you as to self-defense would apply equally to manslaughter as it would to second degree murder in that if you find the defendant was justified or excused in the killing because he was acting in self-defense then you would find him not guilty as to either one."

Defendant's other assignments of error are without merit.

In the trial we find no prejudicial error.

No error.

Judge CLARK concurs.

Judge ARNOLD dissents.

Judge ARNOLD dissenting.

Defendant's motion for nonsuit should have been granted. The exculpatory statements introduced into evidence by the State were not contradicted. All the evidence and reasonable inferences are consistent with defendant's innocence by reason of self-defense as established by the exculpatory statements.

I respectfully dissent from the majority and vote for reversal.