IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-538

 Filed: 3 September 2019

Henderson County, Nos. 17CRS000236-238, 17CRS000613

STATE OF NORTH CAROLINA

 v.

BRUCE WAYNE GLOVER, Defendant.

 Appeal by Defendant from judgment entered 20 September 2017 by Judge W.

Erwin Spainhour in Henderson County Superior Court. Heard in the Court of

Appeals 27 February 2019.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General
 Jonathan D. Shaw, for the State.

 Appellate Defender Glenn Gerding by Assistant Appellate Defender Sterling
 Rozear, for the Defendant.

 DILLON, Judge.

 Defendant Bruce Wayne Glover appeals from the trial court’s judgment

entered upon a jury verdict finding him guilty of possession of various controlled

substances. The jury was instructed on alternative theories of possession; namely,

that Defendant was in “constructive” possession of the controlled substances and,

alternatively, that Defendant “acted in concert” with another to possess the controlled

substances. Defendant contends the trial court improperly instructed the jury on
 STATE V. GLOVER

 Opinion of the Court

“acting in concert” and, thereafter, failed to properly calculate his prior record level

(“PRL”) in sentencing.

 After careful review, we conclude that there was sufficient evidence to support

an instruction on possession by “acting in concert.” However, we conclude that the

trial court committed prejudicial error in calculating Defendant’s PRL and remand

for the limited purpose of resentencing.

 I. Background

 This case arises out of officers’ discovery of various drugs in Defendant’s home.

The evidence at trial tended to show as follows:

 Defendant lived in a home shared with a number of people, including a woman

referred to herein as Ms. Stepp.

 In September 2016, officers arrived at Defendant’s home to investigate drug

complaints they had received. A detective spoke with Defendant in a bedroom of the

home. Defendant told the detective that the bedroom was his private bedroom and

that an alcove beyond the bedroom was also his “personal space.” Defendant

consented to a search of his bedroom and his personal space. Prior to the search,

Defendant told the detective that he did not believe officers would find any illegal

substances in his bedroom or personal space, but only drug paraphernalia. Also prior

to the search, when asked if he had ingested any illegal substances, Defendant

admitted to having used methamphetamine and prescription pills.

 -2-
 STATE V. GLOVER

 Opinion of the Court

 During the search of Defendant’s bedroom, the detective found a white

rectangular pill marked “G3722” masked in aluminum foil, a small bag of marijuana,

scales, rolling papers, plastic bags, and a glass pipe in a dresser. But during the

search of Defendant’s “personal space” adjacent to the bedroom, the detective found

more incriminating evidence; namely, a metal tin that contained, among other items,

(1) methamphetamine, (2) cocaine, (3) heroin, and (4) a small white rectangular pill

that was similar in size, shape, and markings to the white pill found in Defendant’s

bedroom.

 Defendant was charged with and, following a jury trial, subsequently convicted

of possession of methamphetamine, heroin, and cocaine, as well as having attained

the status of an habitual felon. In sentencing, the trial court found Defendant to be

a PRL VI and imposed two separate sentences of fifty (50) to seventy-two (72) months

of imprisonment, running consecutively.

 Defendant timely appealed.

 II. Analysis

 Defendant challenges his conviction in two respects, discussed below. In the

alternative, Defendant contends that his sentencing based on a mistaken PRL was

the result of ineffective assistance of counsel. We address each challenge in turn.

 A. Jury Instructions on Acting in Concert

 At trial, over Defendant’s objection, the court instructed the jury that it could

find Defendant guilty of possession on the theory of acting in concert, in addition to

 -3-
 STATE V. GLOVER

 Opinion of the Court

constructive possession. Defendant contends that the evidence did not support an

instruction on acting in concert.

 Whether evidence offered at trial is sufficient to warrant a jury instruction is

a question of law; “therefore, the applicable standard of review is de novo.” State v.

Cruz, 203 N.C. App. 230, 242, 691 S.E.2d 47, 54, aff’d per curiam, 364 N.C. 417, 700

S.E.2d 222 (2010).

 To support an acting in concert instruction, the State must provide sufficient

evidence that the defendant (1) was “present at the scene of the crime” and (2) “act[ed]

[] together with another who [did] the acts necessary to constitute the crime pursuant

to a common plan or purpose to commit the crime.” State v. Joyner, 297 N.C. 349,

357, 255 S.E.2d 390, 395 (1979); State v. Erlewine, 328 N.C. 626, 637, 403 S.E.2d 280,

286 (1991) (noting that each person may be actually or constructively present and is

equally guilty of any crime committed in pursuance of their common purpose). A

defendant may be guilty through acting in concert even where another person “does

all the acts necessary to commit the crime.” State v. Jefferies, 333 N.C. 501, 512, 428

S.E.2d 150, 156 (1993). “It is not, therefore, necessary for a defendant to do any

particular act constituting at least part of a crime in order to be convicted of that

crime under the concerted action principle[.]” Joyner, 297 N.C. at 357, 255 S.E.2d at

395.

 Possession of drugs requires proof that the defendant (1) knowingly (2)

possessed (3) a controlled substance. See State v. Galaviz-Torres, 368 N.C. 44, 772

 -4-
 STATE V. GLOVER

 Opinion of the Court

S.E.2d 434, 437 (2015). Though we have stated that “[t]he acting in concert theory is

not generally applicable to possession offenses, as it tends to become confused with

other theories of guilt[,] [o]ur courts have instructed juries on both constructive

possession and acting in concert in possession cases.” State v. Diaz, 155 N.C. App.

307, 314, 575 S.E.2d 523, 528 (2002) (internal citation omitted). “Under the doctrine

of acting in concert, the State is not required to prove actual or constructive

possession if it can establish that the defendant was present at the scene of the crime

and the evidence is sufficient to show he [was] acting together with another who [did]

the acts necessary to constitute the crime pursuant to a common plan or purpose to

commit the crime.” State v. Holloway, ___ N.C. App. ___, ___, 793 S.E.2d 766, 774

(2016) (quotation omitted).

 We conclude that there was not only sufficient evidence from which the jury

could find that Defendant constructively possessed controlled substances, but also

sufficient evidence from which the jury could alternatively find that Defendant acted

in concert with Ms. Stepp to possess the controlled substances.

 Defendant does not challenge that there was sufficient evidence that he

constructively possessed the substances found in the metal tin; and, indeed, the

evidence was sufficient to support the jury’s finding that Defendant constructively

possessed those substances. See State v. Davis, 325 N.C. 693, 697, 386 S.E.2d 187,

190 (1989) (holding that a person is in constructive possession of narcotics when “he

has both the power and the intent to control its disposition or use even though he

 -5-
 STATE V. GLOVER

 Opinion of the Court

does not have actual possession [of the narcotics on his person]”). Indeed, Defendant

was present and identified the area where the metal tin was found as his “personal

space.” Further, the jury could have inferred that Defendant admitted to having just

ingested methamphetamine and prescription pills, substances which were found in

the metal tin and nowhere else (except for the white pill found in his bedroom). And

the white pill found in his bedroom matched a pill found in the metal tin. Based on

Defendant’s own admissions to the detective and the results of the search, the jury

could have determined that Defendant had both the power and the intent to control

the disposition of the controlled substances found in the metal tin.

 But we conclude that there also was sufficient evidence from which the jury

could have alternatively determined that Defendant acted in concert to aid Ms.

Stepp’s constructive possession of the controlled substances found in the metal tin.

Specifically, Defendant called Ms. Stepp, who testified that she placed the metal tin

in the dresser in Defendant’s personal space, that the drugs therein were hers, that

she intended to come back later to use them, and that she and Defendant had taken

drugs together in the past. This testimony is evidence that Ms. Stepp possessed

(constructively) the drugs in the metal tin. Further, based on Ms. Stepp’s testimony

along with the State’s evidence, the jury could have found that Defendant was aware

of the presence of the drugs in the metal tin: (1) he admitted to the detective to having

just used methamphetamine, and the only methamphetamine found in the house was

in the metal tin; and (2) he admitted to the detective to having just ingested

 -6-
 STATE V. GLOVER

 Opinion of the Court

prescription pills, and a pill found in his bedroom matched a pill found in the metal

tin. And the evidence was sufficient to support findings that (1) Defendant facilitated

Ms. Stepp’s constructive possession by allowing her to keep her drugs in a place where

they would be safe from others; (2) Defendant did not intend to exert control over the

disposition of those remaining drugs, as they belonged to his friend, Ms. Stepp, and

that she controlled their disposition; and (3) Defendant was actually present when

the drugs were in Ms. Stepp’s constructive possession.

 We, therefore, conclude that the trial court did not err in instructing the jury

on the theory of possession by “acting in concert.” See State v. Garcia, 111 N.C. App.

636, 640-41, 433 S.E.2d 187, 189-90 (1993) (concluding that the evidence was

sufficient to instruct on “constructive possession” and alternatively on possession by

“acting in concert”).

 B. Calculation of Prior Record Level

 Defendant next contends that the trial court erred by sentencing him as a PRL

VI with twenty-one (21) points. We agree that Defendant should have been assigned

fewer than twenty-one (21) points. We conclude that he should have been assigned

seventeen (17) points, which would qualify Defendant to be sentenced as a PRL V

offender. Therefore, we remand for resentencing.

 A trial court’s determination of a defendant’s PRL is a conclusion of law that

is subject to de novo review on appeal. State v. Bohler, 198 N.C. App. 631, 633, 681

S.E.2d 801, 804 (2009).

 -7-
 STATE V. GLOVER

 Opinion of the Court

 A sentencing judge must determine a defendant’s PRL pursuant to Section

15A-1340.14 of our General Statutes. State v. Alexander, 359 N.C. 824, 827, 616

S.E.2d 914, 917 (2005). First, “[t]he State bears the burden of proving, by a

preponderance of the evidence, that a prior conviction exists.” N.C. Gen. Stat. § 15A-

1340.14(f) (2015). Second, the court determines the PRL by adding the points

attributed to each of the defendant’s prior convictions according to their

classifications. N.C. Gen. Stat. § 15A-1340.14(a) (2015).

 The State may prove a prior conviction “by . . . [s]tipulation of the parties[,]”

among other methods. N.C. Gen. Stat. § 15A-1340.14(f). Typically, a “mere

worksheet, standing alone, is insufficient to adequately establish a defendant’s prior

record level.” Alexander, 359 N.C. at 827, 616 S.E.2d at 917. However, a worksheet

that has been agreed upon by both parties will suffice to meet the State’s

“preponderance of the evidence” requirement for each conviction. See Arrington, ___

N.C. at ___, 819 S.E.2d at 333.

 When the parties stipulate to a completed worksheet, they are stipulating that

the facts underlying the conviction support the noted classification of each listed

offense:

 This proof by stipulation necessarily includes the factual
 basis and legal application to the facts underlying the
 conviction. . . . Thus, like a stipulation to any other
 conviction, when a defendant stipulates to the existence of
 a prior second-degree murder offense in tandem with its
 classification as either a B1 or B2 offense, he is stipulating
 that the facts underlying his conviction justify that

 -8-
 STATE V. GLOVER

 Opinion of the Court

 classification.

Id. (emphasis added). “Once a defendant makes this stipulation, the trial court then

makes a legal determination by reviewing the proper classification of an offense so as

to calculate the points assigned to that prior offense.” Id.

 Here, Defendant stipulated to the record pursuant to Section 15A-1340.14(f)

when his defense attorney signed and stipulated to the validity of the entire

worksheet used to determine Defendant’s PRL. “Although we have found that

[D]efendant stipulated to possessing a prior record level of [VI], we will review

[D]efendant's record level to determine if it was unauthorized at the time it was

imposed” or was otherwise invalid as a matter of law. State v. Mack, 188 N.C. App.

365, 380, 656 S.E.2d 1, 12 (2008).1 In so doing, and insofar as the law allows, we will

assume that the stipulated convictions listed in the worksheet are factually

supported. See Arrington, ___ N.C. at ___, 819 S.E.2d at 334 (explaining that judges

are not in the position to question convictions stipulated to by both parties).

 Defendant’s PRL worksheet contains a total of forty-seven (47) prior

convictions from North Carolina, Georgia, and Florida. We must first determine

which convictions were eligible for inclusion in Defendant’s PRL calculation.

 1. Convictions Supporting Habitual Felon Status

 1 We briefly note, here, that Defendant did not object to his sentencing during the trial.
Regardless, a defendant’s appeal is statutorily preserved where he or she alleges the “[t]he sentence
imposed was unauthorized at the time imposed, exceeded the maximum authorized by law, was
illegally imposed, or is otherwise invalid as a matter of law.” State v. Meadows, ___ N.C. ___, ___, 821
S.E.2d 402, 406 (2018) (quoting N.C. Gen. Stat. § 15A-1446(d)(18) (2017)).

 -9-
 STATE V. GLOVER

 Opinion of the Court

 To start, we must first disregard the three convictions used by the jury to

convict Defendant of obtaining habitual felon status. Concurrent with his conviction

in this case of felony possession of controlled substances, Defendant was found to

have attained habitual felon status. And “convictions used to establish a person’s

status as an habitual felon shall not be used” to determine that person’s PRL.

N.C. Gen. Stat. § 14-7.6 (2015). As the jury used three of Defendant’s forty-seven (47)

convictions to assign Defendant habitual felon status, they may not be used in his

PRL calculations. This leaves forty-four (44) prior convictions.

 2. Convictions Rendered in the Same Week or Session of Court

 Next, though his convictions span nearly four decades, Defendant received

many of his convictions in groups on the same day or session of court. “[I]f an offender

is convicted of more than one offense in a single superior court during one calendar

week [or in a single district court in one session of court], only the conviction for the

offense with the highest point total is used.” N.C. Gen. Stat. § 15A-1340.14(d) (2015).

 On 30 June 2006, Defendant was convicted in Henderson County district court

of twelve (12) crimes. The eleven (11) convictions with the lowest point total may not

be used to determine his PRL. Therefore, we are left with a single Class I felony

conviction from 30 June 2006. This reduces the number of prior convictions from

forty-four (44) to thirty-three (33).

 On 14 May 2007, Defendant was convicted in Henderson County superior court

of four crimes. After removing the three convictions with the lowest points, we are

 - 10 -
 STATE V. GLOVER

 Opinion of the Court

left with one Class I felony conviction from 14 May 2007. Therefore, after removing

three convictions, Defendant has thirty (30) remaining prior convictions.

 On 16 October 2009, Defendant was convicted in Henderson County district

court of two crimes. After removing the conviction with the lowest points, we are left

with one Class 1 misdemeanor conviction from 16 October 2009. Therefore,

Defendant has twenty-nine (29) remaining prior convictions.

 On 12 February 2010, Defendant was convicted in Henderson County district

court of five crimes. We must remove four of these convictions, leaving a single Class

1 misdemeanor conviction with the most points from 12 February 2010. Therefore,

after removing four convictions, Defendant has twenty-five (25) remaining prior

convictions.

 Lastly, on 2 August 2013, Defendant was convicted in Henderson County

district court of six crimes. After removing his five convictions with the lower points,

we are left with one Class I felony conviction from 2 August 2013. Therefore, after

removing these five convictions, Defendant has twenty (20) prior convictions

remaining that may be considered in calculating his PRL.

 3. Irrelevant Misdemeanor Convictions

 Only prior felonies, “Class A1 and Class 1 nontraffic misdemeanor offense[s],

impaired driving, impaired driving in a commercial vehicle, and misdemeanor death

by vehicle” may be used to calculate a PRL in felony sentencing. N.C. Gen. Stat. Ann.

§ 15A-1340.14(b) (2015). Other misdemeanor traffic offenses, including driving while

 - 11 -
 STATE V. GLOVER

 Opinion of the Court

license revoked, may not be used to calculate a felony PRL. Id.; State v. Flint, 199

N.C. App. 709, 728, 682 S.E.2d 443, 454 (2009) (“Being that driving while license

revoked is a misdemeanor traffic offense, which is not included in Section 15A–

1340.14(b)(5), it is not a conviction that can be used in determining a defendant's

prior record level.”).

 Of the remaining twenty (20) convictions on Defendant’s worksheet, five are

either classified as Class 2 or lower misdemeanor offenses or are factually described

as “DWLR,” a conviction for driving while license revoked. These five convictions

may not be used to calculate Defendant’s PRL following his present, felony conviction.

After removing these five convictions, Defendant has fifteen (15) prior convictions

remaining.

 4. Split Crimes

 Defendant’s remaining fifteen (15) convictions include two convictions for

possession of drug paraphernalia, from 1983 and 2008. Defendant contends that

these two convictions were improperly considered in the PRL calculation because the

crime has since been split into two categories, one of which is a Class 3 misdemeanor

not eligible for calculation.

 It is true that “the classification of a prior offense is the classification assigned

to that offense at the time the offense for which the offender is sentenced [was]

committed.” N.C. Gen. Stat. § 15A-1340(c). Defendant committed the crimes for

which he is being sentenced in 2016. In 2014, possession of drug paraphernalia was

 - 12 -
 STATE V. GLOVER

 Opinion of the Court

split into two separate crimes: (1) possession of marijuana paraphernalia under

N.C. Gen. Stat. § 90-113.22A (2014), a Class 3 misdemeanor; and (2) possession of

drug paraphernalia under N.C. Gen. Stat. § 90-113.22 (2014), a Class 1

misdemeanor. Defendant argues that the two instances of possession of drug

paraphernalia on his worksheet should be considered Class 3 misdemeanors, and

therefore not included in the PRL calculus, rather than Class 1 misdemeanors,

because no evidence was presented as to what sort of drug paraphernalia was

possessed.

 However, following our Supreme Court’s recent decision in Arrington, we must

assume that the classifications stipulated to by the parties on the worksheet are

correct and sufficiently supported by the underlying facts of the crime. Arrington,

___ N.C. at ___, 819 S.E.2d at 333. Each of Defendant’s possession of drug

paraphernalia charges is classified as a Class 1 misdemeanor, and may be considered

in the present PRL calculation. Fifteen (15) of Defendant’s prior convictions still

remain.

 5. Out-of-State Convictions

 Of the fifteen (15) remaining convictions, six arise from offenses committed

outside of North Carolina. Defendant contends that these crimes were incorrectly

classified and received more points than allowed as a matter of law.

 Out-of-state felony convictions are, by default, treated as Class I felony

convictions under North Carolina law. N.C. Gen. Stat. § 15A-1340.14(e) (2015).

 - 13 -
 STATE V. GLOVER

 Opinion of the Court

Similarly, out-of-state misdemeanor convictions are, by default, treated as Class 3

misdemeanor convictions, id., and are initially not usable in a felony PRL calculation,

N.C. Gen. Stat. § 15A-1340.14(b)(5) (2015). However, either party may overcome

these presumptions by proving, by a preponderance of the evidence, that the out-of-

state conviction reflects an offense that is substantially similar to an offense that

North Carolina classifies differently. N.C. Gen. Stat. § 15A-1340.14(e). If proven, the

felony conviction is not treated as a Class I felony, but rather is treated as the

classification given to the substantially similar North Carolina offense. Id.

 Our Court has long held that, while the parties may stipulate that a defendant

was convicted of an out-of-state offense and that the offense was considered either a

felony or misdemeanor under that state’s law, neither party may stipulate that the

out-of-state conviction is substantially similar to a North Carolina felony or

misdemeanor.2 We have traditionally held that “the question of whether a conviction

under an out-of-state statute is substantially similar to an offense under North

Carolina statutes is a question of law to be resolved by the trial court.” State v.

Hanton, 175 N.C. App. 250, 255, 623 S.E.2d 600, 604 (2006).

 2 State v. Burgess, 216 N.C. App. 54, 59, 715 S.E.2d 867, 871 (2011) (“This Court has repeatedly
held a defendant's stipulation to the substantial similarity of offenses from another jurisdiction is
ineffective because the issue of whether an offense from another jurisdiction is substantially similar
to a North Carolina offense is a question of law.”); see also State v. Powell, 223 N.C. App. 77, 81, 732
S.E.2d 491, 494 (2012); State v. Wright, 210 N.C. App. 52, 71, 708 S.E.2d 112, 125 (2011); State v.
Moore, 188 N.C. App. 416, 426, 656 S.E.2d 287, 293-94 (2008); State v. Palmateer, 179 N.C. App. 579,
581-82, 634 S.E.2d 592, 593-94 (2006).

 - 14 -
 STATE V. GLOVER

 Opinion of the Court

 It may be argued that our Supreme Court’s reasoning in Arrington overrules

this line of precedent. In Arrington, our Supreme Court held that a conviction’s

classification may be stipulated to because it is, in essence, “fact driven.” Arrington,

___ N.C. at ___, 819 S.E.2d at 331. For the purposes of in-state convictions, when the

defendant stipulates to a conviction, “he is stipulating that the facts underlying his

conviction justify that classification.” Id. at ___, 819 S.E.2d at 333. Similarly, it can

be said that, when the parties stipulate to an out-of-state conviction and its

appropriate classification in North Carolina, they are stipulating that the underlying

facts correspond to a particular North Carolina offense and its respective

classification. We do not believe this is the appropriate interpretation of our Supreme

Court’s holding.

 Allowing this form of stipulation requires an additional logical step that was

not present in Arrington. The facts of Arrington concern the appropriate

classification of the defendant’s prior conviction for second-degree murder.

Arrington, ___ N.C. at ___, 819 S.E.2d at 332. Between the time the defendant was

convicted of second-degree murder and the time of the sentencing at issue in the case,

our General Assembly split second-degree murder into two separate sentencing

classifications, B1 and B2, depending on the nature of the offender’s conduct. Id. The

defendant in Arrington stipulated that his conviction was classified as B1, but later

argued that this classification was improper as a matter of law because questions of

law are not subject to stipulation. Id. Our Supreme Court held that the defendant

 - 15 -
 STATE V. GLOVER

 Opinion of the Court

had stipulated that the nature of his conduct underlying his murder conviction

supported a B1 classification, and that such a stipulation was proper. Id. at ___, 819

S.E.2d at 333.

 Notably, there was never any doubt that the facts underlying the conviction

corresponded to the crime of second-degree murder and the Court considered only the

classifications that may be attributed to that offense. For instance, if the offense in

consideration had been forgery instead of second-degree murder, we do not interpret

Arrington to allow a stipulation to a conviction for forgery with a classification of

Class A felony. While second-degree murder may be classified as either Class B1 or

B2, N.C. Gen. Stat. § 14-17(b)(1)-(2) (2017), there are no facts possible which would

support a conviction for a Class A forgery, as no such crime exists, see

N.C. Gen. Stat. § 14-119−125 (2017) (stating that each forgery crime is punishable as

either a Class G, H, or I felony).

 In the same respect, in order to equate an out-of-state conviction with a North

Carolina offense, the parties must first establish that the elements of the out-of-state

offense are similar to those of a North Carolina offense. This additional legal

comparison must be made before an appropriate range of classifications can be

determined. A stipulation that a defendant committed “burglary” in another state

does not necessarily mean that he or she satisfied the elements of burglary in North

Carolina. Once the legal similarities have been drawn between an out-of-state

offense and its North Carolina corollary, it may be that the North Carolina offense

 - 16 -
 STATE V. GLOVER

 Opinion of the Court

can have an array of classifications; only then may a stipulation determine the

underlying facts and the respective classification.

 For these reasons we do not interpret the holding in Arrington to overrule our

longstanding precedent that the parties may not stipulate to the substantial

similarity of an out-of-state conviction, nor its resulting North Carolina classification.

Here, the State put on no evidence to support a comparison of any of Defendant’s out-

of-state convictions to North Carolina offenses. Therefore, we must classify each

misdemeanor conviction as a Class 3 misdemeanor and each felony conviction as a

Class I felony.

 On the worksheet, the parties appropriately stipulate that three of Defendant’s

six out-of-state convictions are misdemeanors in their state of origin, two are felonies,

and one does not have a classification noted. We must classify these misdemeanors

as Class 3 misdemeanors, and therefore may not include them in Defendant’s felony

PRL calculations. We must classify the two felony convictions as Class I felonies in

our calculations. There is no information regarding the remaining conviction’s

classification, so we elect to exclude it from our calculations.

 After removing the three out-of-state misdemeanors and the conviction

without a classification, the total prior convictions eligible for calculating Defendant’s

PRL is reduced from fifteen (15) to eleven (11).

 6. Calculation

 - 17 -
 STATE V. GLOVER

 Opinion of the Court

 Our de novo review of Defendant’s sentencing worksheet shows a total of

eleven (11) convictions that may be used to calculate his felony PRL. The eleven

convictions, their stipulated or required classifications, and the point values assigned

to those classifications are as follows:

 N.C.
 Classification Point
 Offense Date State
 Misdemeanor (M) Value3
 Or Felony (F)
 Possession of Drug Paraphernalia 12/5/1983 N.C. M - Class 1 1
 Felony Possession SCH II CS 5/14/2007 N.C. F - Class I 2
 Assault on a Female 10/11/1988 N.C. M - Class 1 1
 Driving While Impaired 10/20/1988 N.C. M - Class 1 1
 Felony Possession SCH II CS 06/30/2006 N.C. F - Class I 2
 Possession of Drug Paraphernalia 7/2/2008 N.C. M - Class 1 1
 Simple Possession SCH II CS 2/12/2010 N.C. M - Class 1 1
 Receiving Stolen Goods/Property 10/16/2009 N.C. M - Class 1 1
 Possession Methamphetamine 8/2/2013 N.C. F - Class I 2
 Delivery of Cocaine w/i 1000 Ft of
 8/5/2003 FL F - Class I 2
 a Place of Worship
 VOP on Delivery of Cocaine 3/26/2004 FL F - Class I 2
 Total Points: 16

 Additionally, Defendant receives an extra point because his worksheet

includes previous convictions for felony possession of controlled substances, the same

crime he was convicted of in this case. N.C. Gen. Stat. § 15A-1340.14(b)(6) (2015) (“If

all the elements of the present offense are included in any prior offense for which the

offender was convicted, whether or not the prior offense or offenses were used in

 3 The point values are derived from Section 15A-1340.14(b). See N.C. Gen. Stat. § 15A-
1340.14(b).

 - 18 -
 STATE V. GLOVER

 Opinion of the Court

determining prior record level, 1 point.”). Per our calculations, the Defendant should

have received only seventeen (17) total points, giving him a PRL of V. See

N.C. Gen. Stat. § 15A-1340.14(c) (2015). Therefore, as Defendant is entitled to have

his sentence bated, we remand to the trial court for the limited purpose of sentencing

Defendant within the range corresponding to PRL V.

 C. Ineffective Assistance of Counsel

 Lastly, Defendant has filed a Motion for Appropriate Relief (MAR) alongside

his appeal, arguing that he received ineffective assistance of counsel. We disagree,

and deny Defendant’s MAR.

 The necessary components of ineffective assistance of counsel are “(1) ‘counsel's

performance was deficient,’ meaning it ‘fell below an objective standard of

reasonableness,’ and (2) ‘the deficient performance prejudiced the defense,’ meaning

‘counsel's errors were so serious as to deprive the defendant of a fair trial, a trial

whose result is reliable.’ ” State v. Garcell, 363 N.C. 10, 51, 678 S.E.2d 618, 644 (2008)

(quoting Strickland v. Washington, 466 U.S. 668, 687-88 (1984)); see also State v.

Braswell, 312 N.C. 553, 562-63, 324 S.E.2d 241, 248 (1985).

 Specifically, Defendant argues that his trial attorney was deficient because he

stipulated to the underlying facts and classifications of three prior convictions from

Florida in March of 2004 that should not have been considered at all. Defendant

contends that he was materially prejudiced because the trial court’s consideration of

these offenses raised his PRL. Further, Defendant argues, there is no rational trial

 - 19 -
 STATE V. GLOVER

 Opinion of the Court

strategy that would warrant stipulation to a higher class of offense than what was

actually committed. Attached to the MAR, Defendant provides the Florida court

records concerning the convictions and an affidavit by a Florida attorney.

 Defendant has filed a MAR with our Court based on his erroneous

classification as a PRL VI offender. But we cannot say that any error by his trial

counsel prejudiced the sentence Defendant will receive on remand as a PRL V

offender. Our de novo review of Defendant’s convictions already removes most of his

out-of-court convictions from the PRL calculation. If we were to assume the

allegations in Defendant’s MAR were true, we would remove only the conviction for

“VOP on Delivery of Cocaine,” as “VOP” likely refers to a violation of probation that

may not be appropriately considered as a distinct crime. See State v. Clayton, 206

N.C. App. 300, 305, 697 S.E.2d 428, 432 (2010). Removing this conviction would

reduce Defendant’s point total from seventeen (17) to fifteen (15) points, leaving him

still within a PRL of V. Therefore, any deficient performance by Defendant’s trial

counsel was not prejudicial. We deny Defendant’s MAR.

 III. Conclusion

 We conclude that the trial court’s decision to instruct the jury on the theory of

acting in concert was not error, as there was sufficient evidence to support the

instruction. However, we further conclude that the trial court erred by sentencing

Defendant as a PRL VI, because the worksheet stipulated to by the parties supported

a PRL of V. Therefore, we remand the trial court’s judgment for the limited purpose

 - 20 -
 STATE V. GLOVER

 Opinion of the Court

of entering a sentence appropriate for a PRL V. Further, by this opinion, we deny

Defendant’s MAR because, based on our disposition, any possible deficiency by his

trial counsel in the calculation of Defendant’s PRL did not cause Defendant to be

classified as a PRL V.

 NO ERROR IN PART; REVERSED AND REMANDED IN PART FOR

RESENTENCING.

 Judge INMAN concurs.

 Judge COLLINS concurs in part and dissents in part by separate opinion.

 - 21 -
 No. COA18-538 – State v. Glover

 COLLINS, Judge concurring in part and dissenting in part.

 I concur in the majority’s opinion regarding Defendant’s prior record level.

However, I would not reach that issue because I conclude there was insufficient

evidence to support the trial court’s jury instruction on the theory of acting in concert.

I further conclude the trial court’s erroneous instruction was not harmless error and

entitles Defendant to a new trial. I therefore respectfully dissent.

 Defendant was found guilty of possession of methamphetamine, possession of

heroin, and possession of cocaine. The elements of possession of a controlled

substance are that defendant (1) knowingly (2) possessed (3) a controlled substance.

State v. Galaviz-Torres, 368 N.C. 44, 48, 772 S.E.2d 434, 437 (2015).

 The “knowingly possessed” elements of possession of a controlled substance

may be established by a showing that: “(1) the defendant had actual possession; (2)

the defendant had constructive possession; or (3) the defendant acted in concert with

another to commit the crime.” State v. Diaz, 155 N.C. App. 307, 313, 575 S.E.2d 523,

528 (2002) (citing State v. Garcia, 111 N.C. App. 636, 639-40, 433 S.E.2d 187, 189

(1993). “According to well-established North Carolina law, ‘it is error for the trial

judge to charge on matters which materially affect the issues when they are not

supported by the evidence.’” State v. Malachi, 371 N.C. 719, 731, 821 S.E.2d 407, 416
 STATE V. GLOVER

 COLLINS, J., concurring in part and dissenting in part.

(2018) (quoting State v. Jennings, 276 N.C. 157, 161, 171 S.E.2d 447, 449 (1970)

(citations omitted)).

 “Actual possession requires that a party have physical or personal custody of

the item.” Malachi, 371 N.C. at 730, 821 S.E.2d at 416 (2018) (quotation marks and

citation omitted). In this case, it is un disputed that neither Defendant nor Ms. Stepp

actually possessed the narcotics found in the metal tin in the dresser drawer. 4

 “Constructive possession of contraband material exists when there is no actual

personal dominion over the material, but there is an intent and capability to maintain

control and dominion over it.” State v. Brown, 310 N.C. 563, 568, 313 S.E.2d 585, 588

(1984). Where an accused has nonexclusive possession of the premises where the

contraband is found, “constructive possession of the contraband materials may not be

inferred without other incriminating circumstances.” Id. at 569, 313 S.E.2d at 588-

589 (citation omitted). The State’s evidence showed the metal tin containing

methamphetamine, heroin, and cocaine was found in a dresser drawer in Defendant’s

personal space. The personal space was separated from Defendant’s bedroom by a

door. Four people were in this personal space, while Defendant was in his bedroom,

when officers knocked on Defendant’s bedroom door and asked to search the

surrounding areas. Defendant admitted to officers to having ingested

 4 Although the trial court instructed the jury on actual possession, Defendant did not object to
this instruction at trial and did not argue plain error on appeal. N.C. R. App. P. 10(a)(2), (a)(4). Any
argument related to this instruction is thus deemed abandoned. N.C. R. App. P. 28(a).

 2
 STATE V. GLOVER

 COLLINS, J., concurring in part and dissenting in part.

methamphetamine, a substance found in the metal tin and nowhere else in the

residence, and the white, rectangular pill found in his bedroom was similar in shape

and markings to a pill found in the metal tin. As Defendant concedes on appeal, this

evidence was sufficient to support a jury instruction on constructive possession of a

controlled substance.

 “To act in concert means to act together, in harmony or in conjunction one with

another pursuant to a common plan or purpose.” State v. Joyner, 297 N.C. 349, 356,

255 S.E.2d 390, 395 (1979). While it is not “necessary for a defendant to do any

particular act constituting at least part of a crime in order to be convicted of that

crime under the concerted action principle[,]” the defendant must be “present at the

scene of the crime and the evidence [must be] sufficient to show he is acting together

with another who does the acts necessary to constitute the crime pursuant to a

common plan or purpose to commit the crime.” Id. at 357, 255 S.E.2d at 395. Where

a defendant did not do any particular act forming a part of the crime charged,

evidence of the existence of concerted action must come from other facts. Id. at 356-

57, 255 S.E.2d at 395. “The acting in concert theory is not generally applicable to

possession offenses, as it tends to become confused with other theories of guilt.” Diaz,

155 N.C. App. at 314, 575 S.E.2d at 528 (citing State v. James, 81 N.C. App. 91, 97,

344 S.E.2d 77, 81 (1986)).

 3
 STATE V. GLOVER

 COLLINS, J., concurring in part and dissenting in part.

 Although Defendant was present when the narcotics were found in the dresser

drawer, and was thus present at the scene of the crime, there is no evidence that

Defendant was present when the tin containing the narcotics was placed in the

dresser drawer. Moreover, Ms. Stepp admitted on the stand to her possession of the

narcotics. Ms. Stepp testified that the tin was hers and that the last place she had it

was at Southbrook Drive, where she and Defendant used to live amongst other people.

When asked where she last left the tin, Ms. Stepp answered,

 I put it inside a drawer. I want to say I tried to put
 something over it. But I didn’t intend – I wasn’t there. I
 wasn’t arrest that day, because I had just left. I didn’t
 intend to be gone long. But I didn’t get back as quickly as
 I would like to, and I didn’t tell anybody it was there,
 because I didn’t think it was relevant.

 While the evidence presented was sufficient evidence of Defendant’s

constructive possession, and the evidence presented was sufficient evidence of Ms.

Stepp’s constructive possession, the State failed to produce any evidence of concerted

action – Defendant acting together with Ms. Stepp pursuant to a common plan or

purpose to possess the contraband in the metal tin. Joyner, 297 N.C. at 356, 255

S.E.2d at 395. The majority concludes that the evidence was sufficient to support a

finding that “Defendant facilitated Ms. Stepp’s constructive possession by allowing

her to keep her drugs in a place where they would be safe from others[.]” I discern

no evidentiary support for this conclusion, and believe the acting in concert theory of

possession has become confused with the constructive theory of possession in this

 4
 STATE V. GLOVER

 COLLINS, J., concurring in part and dissenting in part.

case, which is precisely why “[t]he acting in concert theory is not generally applicable

to possession offenses[.]” Diaz, 155 N.C. App. at 314, 575 S.E.2d at 528 (citation

omitted).

 As there was insufficient evidence to support an acting in concert instruction,

the trial court erred in giving such instruction. Malachi, 371 N.C. at 731, 821 S.E.2d

at 416. The trial court’s error, however, is subject to harmless error analysis. Id. at

738, 821 S.E.2d at 421. Thus, Defendant must show “‘there is a reasonable possibility

that, had the error in question not been committed, a different result would have been

reached at the trial out of which the appeal arises.’” Id. at 738, 821 S.E.2d at 421

(quoting N.C. Gen. Stat. § 15A-1443(a) (2017)). Our North Carolina Supreme Court

has emphasized the serious nature of instructional error, as occurred in this case, and

the close scrutiny required, explaining that

 the history of this Court’s decisions in cases involving the
 submission of similar erroneous instructions and our
 consistent insistence that jury verdicts concerning a
 defendant’s guilt or innocence have an adequate
 evidentiary foundation persuade us that instructional
 errors like the one at issue in this case are exceedingly
 serious and merit close scrutiny to ensure that there is no
 “reasonable possibility” that the jury convicted the
 defendant on the basis of such an unsupported legal theory.
 However, in the event that the State presents exceedingly
 strong evidence of defendant’s guilt on the basis of a theory
 that has sufficient support and the State’s evidence is
 neither in dispute nor subject to serious credibility-related
 questions, it is unlikely that a reasonable jury would elect
 to convict the defendant on the basis of an unsupported
 legal theory.

 5
 STATE V. GLOVER

 COLLINS, J., concurring in part and dissenting in part.

Malachi, 371 N.C. at 738, 821 S.E.2d at 421.

 While the State’s evidence was adequate to support a conclusion of Defendant’s

constructive possession, and thus sufficient to support a jury instruction, it was not

“exceedingly strong evidence” of Defendant’s guilt based on a constructive possession

theory. On the other hand, the State’s evidence of Ms. Stepp’s constructive possession

is “exceedingly strong” and disputes the evidence of Defendant’s guilt. Ms. Stepp

testified, “The yellow tin is mine. . . . I put it inside a drawer. . . . I didn’t tell anybody

it was there, because I didn’t think it was relevant. . . .” When asked, “You realize

that you are admitting now that you had possession of drugs correct?”, Ms. Stepp

responded, “Yes. Yes.”

 Where the evidence of Defendant’s constructive possession was not exceedingly

strong, Ms. Stepp admitted to possession of the controlled substances, and the jury

was allowed to convict Defendant for acting in concert with Ms. Stepp, there is

certainly a “reasonable possibility” that the jury elected to convict Defendant on the

basis of the unsupported legal theory of acting in concert to possess the controlled

substances. Accordingly, I would vacate Defendant’s convictions for possession of

methamphetamine, possession of heroin, possession of cocaine, and having attained

habitual felon status, and remand the case for a new trial.

 6