STATE OF NORTH CAROLINA v. JAMES DONNELL ALEXANDER

No. 622A04

(Filed 19 August 2005)

**Sentencing— calculation of prior record level—method**

Defendant's prior record level was properly calculated during sentencing for assault where the court relied on defense counsel's statements regarding defendant's prior record level, defense counsel's invitation to the court to consult defendant's prior record level worksheet, and the trial judge's knowledge of the plea agreement between defendant and the State. While a worksheet standing alone is not sufficient to establish a defendant's prior record level, a defendant need not make an affirmative statement to stipulate to his or her prior record level or to the State's summation of the facts, particularly if defense counsel had an opportunity to object to the stipulation in question but failed to do so. The trial judge here used a reliable method to calculate defendant's prior record level. N.C.G.S. § 15A-1340.14(f)(4).

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 167 N.C. App. 79, 604 S.E.2d 361 (2004), finding error in the judgment and commitment entered 8 September 2003 by Judge Jerry R. Tillett in Superior Court, Pasquotank County and ordering a new sentencing hearing. Heard in the Supreme Court 17 May 2005.

*Roy Cooper, Attorney General, by Christopher W. Brooks, Assistant Attorney General, for the State-appellant.*

*Staples S. Hughes, Appellate Defender, by Kelly D. Miller, Assistant Appellate Defender, for defendant-appellee.*

BRADY, Justice.

The sole issue before this Court is whether the trial court properly calculated defendant James Donnell Alexander's prior record level in sentencing defendant to a minimum term of imprisonment of 80 months to a maximum term of 105 months. We find that, pursuant to N.C.G.S. § 15A-1340.13(b) and 15A-1340.14(f), defendant stipulated to his prior record level and that the trial judge used a reliable method to calculate defendant's prior record level. Therefore,

defendant's case is remanded to the North Carolina Court of Appeals for consideration of the remaining assignments of error.

## FACTUAL AND PROCEDURAL BACKGROUND

On 5 February 2003, defendant was arrested, pursuant to an arrest warrant, by officers with the Elizabeth City Police Department on the charge of assault with a deadly weapon with intent to kill inflicting serious injury, a Class C felony committed on 28 January 2003. This matter was later heard before Judge Jerry R. Tillett at the 8 September 2003 Criminal Session of Pasquotank County Superior Court. Defendant entered a plea of guilty to the assault charge as part of a plea arrangement with the State. As a result, the following exchange occurred between defendant and the trial court:

> The Court: I understand you have a plea bargain, the terms and conditions of which are that you will plead guilty to this charge and the State will agree that you will be sentenced to the minimum sentence of—minimum of 80 months and a maximum of 105 months?
>
> The Defendant: Yes.
>
> The Court: Is this correct as being your full plea?
>
> The Defendant: Yes, sir.
>
> The Court: Do you now personally accept this arrangement?
>
> The Defendant: Yes.
>
> The Court: Other than the plea arrangement between you and the prosecutor has anyone made you any promises or threatened you in any way to cause you to enter this plea against your wishes?
>
> The Defendant: No.
>
> The Court: Do you enter this plea of your own free will, fully understanding what you are doing?
>
> The Defendant: Yes, sir.
>
> The Court: Do you have any questions?
>
> The Defendant: No, sir.

After this colloquoy, defendant stipulated to a factual basis for the plea, in which the State summarized the evidence it would have

presented had the case proceeded to trial. The trial court then asked defendant's attorney whether he had anything "to say" with respect to sentencing. Defendant's attorney related a brief background of defendant, concluding by remarking that defendant "is a single man and up until this particular case he had no felony convictions, as you can see from his worksheet."

The worksheet referenced by defendant's attorney was entitled "Worksheet Prior Record Level for Felony Sentencing and Prior Conviction Level for Misdemeanor Sentencing (Structured Sentencing)," AOC-CR-600, Rev. 7/01. This worksheet itemized five prior misdemeanor convictions: three Class 2 misdemeanors, one Class 3 misdemeanor, and one Class A1 misdemeanor, the only misdemeanor carrying with it any implications for the calculation of defendant's prior record level. Under the portion of the worksheet titled "Scoring Prior Record/Felony Sentencing," a number one was placed next to "Prior Class A1 or 1 Misdemeanor Conviction," which carried with it a single "point." This single point reflected defendant's "Prior Record Level" of II. We note that defendant does not challenge the accuracy of the information contained in this worksheet.

After calculating defendant's prior record level at II, the trial judge, consistent with the plea arrangement between the State and defendant, sentenced defendant to a minimum term of imprisonment of 80 months and a maximum term of 105 months. In so doing, the trial judge stated, "The sentence is imposed also pursuant to a plea arrangement as to sentencing and the sentence is within the presumptive range." Moreover, in completing the "Judgment and Commitment Active Punishment Felony" form, AOC-CR-601, Rev. 3/02, the trial judge marked the box indicating that "The Court . . . makes no written findings because the prison term imposed is . . . within the presumptive range of sentences under G.S. 15A-1340.17(c)."

After indicating that the sentence was being imposed pursuant to a plea arrangement and that the sentence was "within the presumptive range," the trial judge asked defense counsel if he had seen the "restitution worksheet." Defense counsel said, "No, Your Honor, I haven't." The trial court, however, then asked defense counsel whether he would "[s]tipulate to the worksheet" to which defense counsel responded "Yes, sir." The trial judge recommended that defendant pay the restitution and court-appointed attorney's fees "shown on the worksheet which has been stipulated and agreed to by the defendant as [a] condition of post-release supervision."

Defendant appealed, claiming *inter alia*, that the trial court erred in calculating his prior record level and sentencing him accordingly "because the [S]tate failed to prove his prior conviction." A majority of the Court of Appeals granted defendant a new sentencing hearing, finding that defense counsel's statement did not constitute a stipulation with respect to defendant's prior record level and "defendant's stipulation to an 80-105 month sentence, standing alone, does not render the issue of whether the State proved defendant's prior conviction moot." *State v. Alexander*, 167 N.C. App. at 84, 604 S.E.2d at 364. Due to the majority's resolution of the issue of defendant's prior record level, the Court of Appeals did not reach defendant's remaining issues on appeal. However, Judge Timmons-Goodson dissented, concluding that "defendant stipulated to his prior record level . . . [thus] the trial court did not err in sentencing defendant." *Id. at* 85, 604 S.E.2d at 365. The State entered notice of appeal with this Court, and oral arguments were heard on 17 May 2005.

## ANALYSIS

Under the Structured Sentencing Act, before imposing a felony sentence, the sentencing judge must determine a defendant's prior record level pursuant to N.C.G.S. § 15A-1340.14. N.C.G.S. § 15A-1340.13(b) (2003). A prior conviction, in turn, can be proved by any of the following methods:

(1) Stipulation of the parties.

(2) An original or copy of the court record of the prior conviction.

(3) A copy of records maintained by the Division of Criminal Information, the Division of Motor Vehicles, or of the Administrative Office of the Courts.

(4) Any other method found by the Court to be reliable.

*Id.* § 15A-1340.14(f) (2003). "The State bears the burden of proving, by a preponderance of the evidence, that a prior conviction exists." *Id.* Defendant argues that the State failed to carry this burden because "the [S]tate offered no court records or other official records in support of its assertion that defendant had one prior Class A1 misdemeanor conviction. In fact, the only document presented at sentencing was the prior record level worksheet."

There is no doubt that a mere worksheet, standing alone, is insufficient to adequately establish a defendant's prior record level. On appeal, the State, however, argues that the aforementioned exchange

between the trial judge and defense counsel constituted a stipulation; thus, defendant is not entitled to a new sentencing hearing. We agree that defendant stipulated to his prior record level pursuant to N.C.G.S. § 15A-1340.14(f)(1) and also find that the trial court calculated defendant's prior record level based upon a reliable method, as authorized by N.C.G.S. § 15A-1340.14(f)(4).

" 'While a stipulation need not follow any particular form, its terms must be definite and certain in order to afford a basis for judicial decision, and it is essential that they be assented to by the parties or those representing them. Silence, under some circumstances, may be deemed assent . . . .' " *State v. Powell*, 254 N.C. 231, 234, 118 S.E.2d 617, 619 (1961) (citation omitted), *superseded by statute*, Safe Roads Act of 1983, ch. 435, sec. 29, 1983 N.C. Sess. Laws 332, 354-60 (codified as amended at N.C.G.S. § 20-179(a) (2003)) (requiring the prosecutor to "make all feasible efforts to secure the defendant's full record of traffic convictions, and . . . present to the judge that record for consideration in the [sentencing] hearing"), *as recognized in State v. Denning*, 316 N.C. 523, 342 S.E.2d 855 (1986).

In *State v. Albert*, this Court further refined the parameters of a stipulation, finding that the prosecution's statement to the trial court constituted a stipulation to defendant's lack of a prior criminal record. 312 N.C. 567, 579-80, 324 S.E.2d 233, 241 (1985). In *Albert*, the defendant and two co-defendants were tried and convicted of second-degree murder. *Id.* at 569, 324 S.E.2d at 235. During sentencing, the trial court asked the prosecution, " '[D]o any of them have a prior criminal record?' " The prosecutor responded, " '[O]nly Mr. Dearen. . . .' " *Id.* at 579, 324 S.E.2d at 241. Relying on *State v. Jones*, 309 N.C. 214, 306 S.E.2d 451 (1983), this Court stated in *Albert* that "evidence is credible as a matter of law when the 'non-movant establishes proponent's case by admitting the truth of the basic facts upon which the claim of the proponent rests.' " *Albert*, 312 N.C. at 579, 324 S.E.2d at 241 (quoting *Jones*, 309 N.C. at 220, 306 S.E.2d at 455) (alteration in original). The Court held that the trial court improperly failed to find this factor in mitigation with respect to the defendant because the prosecution had stipulated that of the three co-defendants, only defendant Dearen had a criminal record. *Id.* at 579-80, 324 S.E.2d at 241.

More recently, this Court affirmed a defendant's sentence, concluding that "the record shows the defendant stipulated that the prosecuting attorney could state the evidence." *State v. Mullican*, 329

N.C. 683, 685, 406 S.E.2d 854, 855 (1991). In *Mullican*, as part of a plea agreement, the defendant entered a plea of guilty to attempted first-degree sexual offense in exchange for the State's dismissal of a charge of taking indecent liberties with a child. *Id.* at 684, 406 S.E.2d at 854. The trial court found two aggravating factors and three mitigating factors, but found that the aggravating factors outweighed the mitigating factors and sentenced defendant to fourteen years imprisonment, which was in the aggravated range. *Id.* at 684-85, 406 S.E.2d at 855. The defendant appealed to the Court of Appeals claiming that there was insufficient evidence to support the finding of the aggravating factors. *Id.* at 685, 406 S.E.2d at 855. However, a majority of the Court of Appeals affirmed the defendant's conviction. *Id.*

The defendant appealed and this Court affirmed the defendant's conviction, finding that during sentencing, the defendant stipulated to the prosecuting attorney's statement of what the evidence would show. *Id.* In so holding, this Court reasoned that:

> When the prosecuting attorney said he would summarize the State's evidence with the permission of the defendant, this was an invitation to the defendant to object if he had not consented. He did not do so. The defendant then said he too would like to present his evidence with the consent of the State. We can infer from this that the defendant had consented to the prosecuting attorney's making the statement. The defendant's attorney then made a statement which was consistent with the statement of the prosecuting attorney and concluded it by saying, "[o]f course that is not any excuse for his doing this." This is very nearly an admission of what the State was attempting to prove. We hold that the statement of the prosecuting attorney considered with the statement of the defendant's attorney shows that there was a stipulation that the prosecuting attorney could state what the evidence would show.

*Id.* at 686, 406 S.E.2d at 855-56.

Both *Albert* and *Mullican* establish that, during sentencing, a defendant need not make an affirmative statement to stipulate to his or her prior record level or to the State's summation of the facts, particularly if defense counsel had an opportunity to object to the stipulation in question but failed to do so. Because we find this case sufficiently similar to both *Albert* and *Mullican*, we reverse the Court of Appeals.

Here, defense counsel did not expressly state that he had seen the prior record level worksheet; however, we find it telling that he specifically directed the trial court to refer to the worksheet to establish that defendant had no prior felony convictions. Defense counsel specifically stated that "up until this particular case he had no felony convictions, as you can see from his worksheet." This statement indicates not only that defense counsel was cognizant of the contents of the worksheet, but also that he had no objections to it.

Defendant, by arguing that his trial counsel did not stipulate to his previous misdemeanor conviction, simply seeks to have his cake and eat it too. If defense counsel's affirmative statement with respect to defendant's lack of previous felony convictions was proper, then so too was the implicit statement that defendant's previous misdemeanor convictions were properly reflected on the worksheet in question. Moreover, this Court's previous decisions make it clear that counsel need not affirmatively state what a defendant's prior record level is for a stipulation with respect to that defendant's prior record level to occur. See Albert, 312 N.C. at 579-80, 324 S.E.2d at 241. Therefore, we find that, under these circumstances, defense counsel's statement to the trial court constituted a stipulation of defendant's prior record level pursuant to N.C.G.S. § 15A-1340.14(f)(1). Thus, defendant's sentence was imposed based upon a proper finding of defendant's prior record level.

Moreover, as noted above, a defendant's prior record level can also be established by "[a]ny other method found by the Court to be reliable." N.C.G.S. § 15A-1340.14(f)(4). In the instant case, defense counsel specifically directed the trial judge to rely on the prior record level worksheet in question. The trial court not only considered defense counsel's statement that "up until this particular case [defendant] had no felony convictions, as you can see from his worksheet," but as a result of defense counsel's representation, also considered defendant's prior record level worksheet.

Additionally, defendant entered into a plea arrangement with the State to plead guilty in exchange for a sentence of 80 to 105 months imprisonment, which constituted the minimum and maximum term of imprisonment in the presumptive range for a defendant with a prior record level of II being sentenced for a Class C felony. Generally, a plea arrangement or bargain is "[a] negotiated agreement between a prosecutor and a criminal defendant whereby the defendant pleads guilty to a lesser offense or to one of multiple charges in exchange for some concession by the prosecutor, usu[ally] a more lenient sentence

or a dismissal of the other charges." *Black's Law Dictionary* 1173 (7th ed. 1999); *see generally Santobello v. New York*, 404 U.S. 257, 260-61, 30 L. Ed. 2d 427, 432 (1971); *State v. Collins*, 300 N.C. 142, 265 S.E.2d 172 (1980).

Plea agreements or plea bargains are an integral part of the criminal justice system in North Carolina; during the 2002-03 fiscal year, out of 72,536 criminal matters that survived dismissal, only 2,887 criminal cases went to trial. N.C. Administrative Office of the Courts, *North Carolina Courts FY 2002-2003, Statistical and Operational Summary of the Judicial Branch of Government* 46. This means that the remaining 69,649 criminal cases ended in a plea bargain, representing over 96% of the criminal cases that survived dismissal during that particular year. *Id.* As the United States Supreme Court has stated:

> [D]isposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons. It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and, by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned.

*Santobello*, 404 U.S. at 261, 30 L. Ed. 2d at 432. The economically sound and expeditious practice of plea bargaining should be encouraged, with both sides receiving the benefit of that bargain. In this case, the defendant "bargained" for the State's recommendation of a lesser term of imprisonment, a minimum of 80 months to a maximum of 105 months, as opposed to an aggravated term of imprisonment.

Before accepting defendant's plea of guilty, the trial judge asked defendant whether he understood that he was "pleading guilty to the felony offense of assault with a deadly weapon with intent to kill inflicting serious injury for which [he] could be imprisoned up to 261 months with the exception of limitation to that sentence required by our law and any plea bargain?" to which defendant replied, "Yes, sir." Thus, the trial court was aware that defendant had "bargained" for the State's recommendation of a lesser term of imprisonment, a min-

imum of 80 months to a maximum of 105 months, as opposed to an aggravated term of imprisonment.

Therefore, the trial court's methodology included relying on defense counsel's statements regarding defendant's prior record level, defense counsel's invitation to consult defendant's prior record level worksheet, and the trial judge's knowledge of the plea agreement between defendant and the State. Accordingly, we find that the trial court's calculation of defendant's prior record level was based upon a method "found by the court to be reliable." We cannot find that defendant's prior record level was improperly calculated by the trial court.

## CONCLUSION

For the foregoing reasons, we hold that the State established defendant's prior record level by a preponderance of the evidence; thus, the trial court properly sentenced defendant. Accordingly, the decision of the Court of Appeals is reversed and this case is remanded to that court for consideration of the remainder of defendant's assignments of error not previously addressed.

REVERSED and REMANDED.