IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-847

Filed: 20 October 2020

Yadkin County, No. 17CRS050312-15, 18CRS000019

STATE OF NORTH CAROLINA

v.

CHRISTOPHER ISSAC ALEXANDER, Defendant.

Appeal by Defendant from judgments entered 20 March 2019 by Judge Julia Lynn Gullett in Yadkin County Superior Court. Heard in the Court of Appeals 11 August 2020.

*Attorney General Joshua H. Stein, by Assistant Attorney General Nicholas R. Sanders, for the State.*

*Daniel J. Dolan for Defendant-Appellant.*

INMAN, Judge.

Defendant, who is Black, challenged during his criminal trial a prosecutor's peremptory strike of the only Black juror in the venire as racially motivated and prohibited by *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986). Though the trial court heard thorough arguments and announced findings of fact and conclusions of law to support its ruling, it did not make a record adequately addressing the totality of circumstances presented to it as required by recent clarifying caselaw. As

a result, we remand the matter for further proceedings addressing Defendant's *Batson* claim.

We also vacate three of the judgments to correct an error in the assessment of costs, and remand for the entry of judgments without costs should Defendant's *Batson* claim fail on remand.

## I.  <u>FACTUAL AND PROCEDURAL HISTORY</u>

Defendant was arrested in February 2017 on eight drug charges.  The State's evidence at trial tended to show that Defendant sold cocaine to an undercover Yadkin County law enforcement officer on at least four different occasions during April and May of 2015.

In January of 2018, Defendant was indicted by a grand jury on four counts of possession with intent to sell and deliver cocaine, four counts of selling and delivering cocaine, and one charge of attaining habitual felon status.  The State filed a motion to join all the charges for trial on 5 July 2018, averring that "the offenses are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan."  The trial court granted that motion without objection from Defendant during the pretrial motions hearing on 18 March 2019.  Defendant pled not guilty to all charges, and the case proceeded to trial later that day.

Defendant is Black. Of the 34 people in the pool of prospective jurors, only one person, Mr. Robinson,[1] was Black. Jury selection was not transcribed, and no jurors were polled on their race or ethnicity.

Mr. Robinson was questioned after the State had accepted ten jurors and had stricken two jurors peremptorily. During *voir dire*, Mr. Robinson discussed his employment history and current employment status, his wife's classes from an online university that he could not identify, and a prior criminal charge for child abuse that was dismissed without a conviction. The prosecutor used a peremptory strike on Mr. Robinson. Defendant objected on *Batson* grounds.

In a hearing outside the presence of the jury, Defendant's counsel asserted that the State's decision to strike the only Black prospective juror in the trial of a Black defendant constituted a *prima facie* showing of racial discrimination in jury selection under *Batson*. The State did not challenge Defendant's characterization of Mr. Robinson as Black, nor his assertion that a *prima facie* case of discrimination had been made. Instead, the prosecutor offered several "race neutral options or the reason [he] struck him."

The prosecutor noted Mr. Robinson's "tone of voice" and the "context" of his statements about his job history, which led the prosecutor to surmise that Mr. Robinson had been fired but "was reluctant to talk about it." Though the prosecutor

---

[1] The trial transcript refers to Mr. Robinson as both "Shane Robinson" and "Sean Robinson" at different times. We refer to him by his last name throughout the opinion for ease of reading.

could have confirmed this hunch through further questioning, he explained to the trial court that he declined to do so because he "didn't want to embarrass" Mr. Robinson. The prosecutor also "found troubling" Mr. Robinson's statement that he had been unemployed for a year, making him "the only juror we talked to so far that did not have a legitimate basis of employment and certainly the longest period of anybody we've talked to." The prosecutor said he was further concerned by Mr. Robinson's inability to identify which university his wife attended online. He then summarized his rationale:

> [T]he gentleman struck me as someone who was just not a reasonable citizen basically. He has no job, he has no idea what his wife was doing, [the prosecutor] found him credible on his allegation of child abuse, [which was] the most serious criminal act that we've really dealt with any specificity from anybody on the panel.

Defendant argued that the State's proffered reasons for the peremptory strike were pretextual. He pointed out that Mr. Robinson had described "some type of deferred prosecution," and that the State had accepted a white juror who had a previous marijuana possession charge resolved through a deferred prosecution. He also disagreed with the State's characterization of Mr. Robinson's testimony, contending that Mr. Robinson said he was employed.[2] Further, Defendant argued

---

[2] Defendant contends on appeal that the prosecutor misrepresented that Mr. Robinson was unemployed. We are unable to entertain this contention; both Defendant and the State presented their differing recollections of Mr. Robinson's testimony to the trial court, and it resolved this factual issue by finding as a fact that he said he "has been out of work for a year." Without a transcript of *voir dire*, we are bound to leave that factual determination by the trial court undisturbed.

that the prosecutor's statements about Mr. Robinson's "tone of voice . . . may show some racial issues."

The prosecutor acknowledged the white juror's criminal history, but asserted that "he said he felt he had been treated fairly and implicitly admitted his guilt in that crime, and [the prosecutor] didn't get kind of the same reaction from Mr. Robinson which was the distinction there." Defendant then pointed out that "Mr. Robinson stated he felt like he was treated fairly and . . . you have two jurors that have some type of criminal history, it sounds like they both were deferred proceedings that were later dismissed. They both stated that they felt that they had been treated fairly." Defendant also noted that, like his case, the white juror's "criminal problems or issues actually dealt with drugs, so . . . that makes it even stronger as far as our argument is concerned."

The trial court found that Defendant did not prove purposeful discrimination and overruled his *Batson* objection. The trial court explained from the bench that it had heard all three steps of Defendant's *Batson* challenge before making the following oral ruling:

> THE COURT: The Court has observed the manner and appearance of counsel and jurors during voir dire and has made all relevant determinations of credibility for purposes of this order.
>
> In making these findings of fact, the Court has made determinations as to the race of various individuals. As to the jurors, any findings of race are based upon

representations during the arguments of attorneys.

. . . .

The Court finds that as to parties, lawyers, witness's finding of race are based upon statements of counsel. The Court finds that the Defendant in this case is black.

. . . .

[I]t appears that there was only one person of the African-American race on the jury in the jury pool to the best of the Court's determination.

The Court finds that the only potential juror in the pool that appeared to be African-American was juror number 11, Mr. Sean Robinson.

The Court finds that upon questioning juror number 11, that the prosecutor elicited that juror number 11 worked at Lydall, until he had to make other arrangements and has been out of work for a year. That his wife was in school. That she was attending school on the computer. That he did not have any idea of what school she was attending. That the prosecutor found him credible on the child-abuse allegations, but that the prosecutor was troubled concerning his employment history and the fact that he had no idea where his wife was attending school or what school she was attending. The defense is concerned because this was the only African-American or appeared to be the only African-American person in the jury pool which would effectively be a 100 percent rejection rate of African-American jurors.

. . . .

The Court finds that the State has used a disproportionate number of preemptory challenges to strike African-American jurors in this case, and that on its face, the State's acceptance rate of potential African-American

jurors indicates the likelihood of discrimination in the jury selection process. So the Defendant would've made a prima facie showing based upon the percentage.

Upon the establishment of a prima facie showing of discrimination, the Court considers the racially neutral reasons offered by the State . . . . The reasons offered by the State were the employment history of [Mr. Robinson] and his answers and tone of voice concerning that history. The fact that his wife was in college, that he had no idea what school she was attending, and the troubling situation with the child abuse issues, although the prosecutor found them to be credible in his answers to that.

The Defendant was offered the opportunity to rebut those reasons and indicated, again, that the 100 percent rejection rate was troubling, and that another juror had previous drug charges and that he was not excused.

The Court does find the prosecutor to be credible in stating racially neutral reasons for the exercise of the [peremptory] challenge. In response to such reasons, defense counsel has not shown that the Prosecutor's explanations are [pretextual].

Based upon consideration of the presentations made by both sides and taking into account the various arguments presented, the Defendant has not proven purposeful discrimination in the jury selection process.

Based on the foregoing findings of fact, the Court concludes as a matter of law that because the Defendant may have a prima facie showing in the selection process, . . . and that the reasons that the prosecutor stated were racially neutral, and the Court does find the Prosecutor to be credible in those reasonings.

So taken in the totality in connection with all the findings of fact, the Court does find that he had a . . . sufficient racially neutral basis for the exercise of a [peremptory]

challenge[] as to that juror.  Therefore, the objection to the
State's exercise of [peremptory] challenge as to potential
juror number 11, Mr. Robinson . . . is overruled and the
[peremptory] challenge is allowed.

Jury selection then resumed.  The jury ultimately convicted Defendant on all
counts, and the trial judge imposed four consecutive judgments, assessing costs in
each.  Defendant appeals.

## II.  ANALYSIS

Defendant presents two principal arguments on appeal: (1) the trial court erred
in denying his *Batson* challenge or, in the alternative, failed to make adequate
findings of fact under the totality of the circumstances as explained in *State v. Hobbs*,
374 N.C. 345, 841 S.E.2d 492 (2020); and (2) the trial court violated N.C. Gen. Stat. §
7A-304 in assessing costs in each of the four judgments rather than only once
consistent with *State v. Rieger*, ___ N.C. App. ___, 833 S.E.2d 699 (2019).  The State,
in addition to addressing Defendant's first argument on the merits, contends that he
failed to adequately preserve his *Batson* challenge for review.  As to the second
argument, the State recognizes that the underlying rationale of *Rieger* may require
vacatur of the judgments for a single imposition of costs.  We address each line of
inquiry in turn.

*A.  Standards of Review*

In evaluating a *Batson* challenge, "[t]he trial court has the ultimate
responsibility of determining whether the defendant has satisfied his burden of

proving purposeful discrimination." *Hobbs*, 374 N.C. at 349, 841 S.E.2d at 497 (citations and quotation marks omitted). Such a determination is afforded "great deference" on appeal, *State v. Golphin*, 352 N.C. 364, 427, 533 S.E.2d 168, 211 (2000) (citations omitted), with reviewing courts "overturning it only if it is clearly erroneous." *Hobbs*, 374 N.C. at 349, 841 S.E.2d at 497 (citation omitted). Trial courts faced with resolving a *Batson* claim "must make specific findings of fact at each stage of the *Batson* inquiry that it reaches" in aid of the standard's application upon appellate review. *State v. Headen*, 206 N.C. App. 109, 114, 697 S.E.2d 407, 412 (2010) (citation and quotation marks omitted).

Alleged statutory violations are, by contrast, subject to no deference whatsoever. *State v. Johnson*, 253 N.C. App. 337, 345, 801 S.E.2d 123, 129 (2017). "Alleged statutory errors are questions of law and as such, are reviewed *de novo*." *State v. Mackey*, 209 N.C. App. 116, 120, 708 S.E.2d 719, 721 (2011) (internal citations omitted). We therefore analyze Defendant's argument that the trial court failed to comply with N.C. Gen. Stat. § 7A-304 in its imposition of costs by "considering the matter anew and freely substituting our own judgment for that of the trial court." *State v. Edgerton*, ___ N.C. App. ___, ___, 832 S.E.2d 249, 253 (2019) (citation omitted).

*B. Preservation*

The State contends in its principal brief that Defendant's *Batson* challenge was not preserved because: (1) the record does not disclose direct evidence of Mr. Robinson's race, and Defendant failed to "make a record which shows the race of a challenged juror," *State v. Willis*, 332 N.C. 151, 162, 420 S.E.2d 158, 162 (1992) (citation omitted); and (2) jury selection was neither recorded nor reconstructed by a narrative agreed upon by the parties, leaving us with only counsels' descriptions of *voir dire*, their *Batson* arguments, and the trial court's examination of and ruling on the same. Reviewing the record and recent caselaw, we disagree with the State on both points and hold the record is "minimally sufficient to permit appellate review." *State v. Campbell*, ___ N.C. App. ___, ___, 846 S.E.2d 804, 807 (2020).

The State correctly notes that the record does not contain direct evidence of Mr. Robinson's racial identity or the racial identity of other jurors. However, such direct evidence is not strictly required where the record discloses "what amounts to a stipulation of the racial identity of the relevant prospective jurors." *State v. Bennett*, 374 N.C. 579, 595, 843 S.E.2d 222, 233 (2020).

In *Bennett*, a defendant brought a *Batson* claim but did not establish the race of the jurors struck by the State on the record through self-identification or other direct evidence. *Id.* at 591, 843 S.E.2d at 231. What the record did reveal, however, was an agreement between the State, defendant's counsel, and the trial court that the challenged jurors were Black. *Id.* at 594, 843 S.E.2d at 233. Our Supreme Court

held that this agreement was sufficient to permit appellate review because "the record reveals the complete absence of any dispute among counsel for the parties and the trial court concerning the racial identity of the persons who were questioned during the jury selection process, . . . resulting in what amounts to a stipulation of the racial identity of the relevant prospective jurors." *Id.* (citations omitted). In announcing its holding, the Supreme Court further explained that "[w]hile a stipulation must be definite and certain in order to afford a basis for judicial decision, stipulations and admissions may take a variety of forms and *may be found by implication*." *Id.* (emphasis added) (citations, alterations, and quotation marks omitted). In doing so, it distinguished its earlier decisions in *State v. Mitchell*, 321 N.C. 650, 365 S.E.2d 554 (1988), *State v. Payne*, 327 N.C. 194, 394 S.E.2d 158 (1990), and *State v. Brogden*, 329 N.C. 534, 407 S.E.2d 158 (1991), wherein defendants unsuccessfully "attempted to establish the racial identities of each of the prospective jurors on the basis of the subjective impressions of a limited number of trial participants." *Bennett,* 374 N.C. at 594, 843 S.E.2d at 233.

Defendant's counsel in this case opened his *Batson* argument by asserting that "[a]s far as a prima facie case, . . . my client is African-American . . . . There was one African-American that was on the jury pool; that juror was brought to the jury box, and he was peremptorily challenged[.]" Rather than rebut Defendant's *prima facie* case—by, for example, arguing that Mr. Robinson was *not* Black or that there were

other Black jurors passed by the State—the prosecutor apparently conceded the question and instead proceeded to "offer . . . a race neutral . . . reason" for striking Mr. Robinson. This absence of any dispute as to Mr. Robinson's race (or whether any other jurors were Black) continued through the parties' additional arguments back and forth, and was reflected in the trial court's determination of Mr. Robinson's race from the bench:

> In making these findings of fact, the Court has made determinations as to the race of various individuals. As to the jurors, any findings of race are based upon representations during the arguments of attorneys.
>
> . . . .
>
> The Court finds that as to parties, lawyers, witness's finding of race are based upon statements of counsel. The Court finds that the Defendant in this case is black.
>
> . . . .
>
> That as of the time that the State attempted to exercise this [peremptory] challenge, 10 jurors have been accepted by the State of which to the best of the Court's determination 10 are white and zero are black. That as of the time the State attempted to exercise that [peremptory] challenge, the State had exercised two . . . [peremptory] challenges of which zero were persons of an African-American race.
>
> As a matter of fact, it appears that there was only one person of the African-American race on the jury in the jury pool to the best of the Court's determination.

> The Court finds that the only potential juror in the pool that appeared to be African-American was juror number 11, Mr. Sean Robinson.

We acknowledge that, unlike in *Bennett*, the prosecutor did not expressly state Mr. Robinson's race or the race of other jurors on the record below. This distinction does not alter our holding that the parties effectively entered into a stipulation to that effect. As recognized in *Bennett*, "stipulations and admissions may take a variety of forms and may be found by implication." 374 N.C. at 594, 843 S.E.2d at 233 (quotation marks and citations omitted). And, as the Supreme Court has elsewhere observed, "[s]ilence, under some circumstances, may be deemed assent." *State v. Alexander*, 359 N.C. 824, 828, 616 S.E.2d 914, 917 (2005) (citations and quotation marks omitted); *see also State v. Hurley*, 180 N.C. App. 680, 684, 637 S.E.2d 919, 923 (2006) ("Stipulations do not require affirmative statements and silence may be deemed assent in some circumstances, particularly if the defendant had an opportunity to object, yet failed to do so." (citing *Alexander*, 359 N.C. at 828-29, 616 S.E.2d at 917-18)).[3] Stated differently, because "the record reveals the complete

---

[3] We also note, as the Supreme Court did in *Bennett*, that the core inquiry in a *Batson* challenge is "whether the *prosecutor* is excluding people from a jury because of their race," *Bennett*, 374 N.C. at 596 n.4, 843 S.E.2d at 234 n.4 (emphasis added), suggesting that it is the *prosecutor*'s understanding of the prospective juror's race that ultimately matters for purposes of analysis. The prosecutor's tacit acknowledgment that the challenged juror was Black distinguishes this case from those in which the record contained no indication of the prosecutor's belief as to the prospective juror's race. *See Mitchell*, 321 N.C. at 655-56, 365 S.E.2d at 557 (holding a court reporter's notation as to prospective jurors' races would not create an adequate record for review because "[t]he court reporter . . . is in no better position to determine the race of each prospective juror . . . . An individual's race is not always easily discernable, and the potential for error by a court reporter acting alone is great"); *Payne*, 327 N.C. at

absence of any dispute among counsel for the parties and the trial court concerning the racial identity of the persons who were questioned during the jury selection process," *Bennett*, 374 N.C. at 595, 843 S.E.2d at 233, Defendant's failure to elicit direct evidence of Mr. Robinson's race or the race of other jurors does not preclude our review.

The lack of a verbatim transcript of *voir dire* also does not *per se* preclude *Batson* review. *State v. Sanders*, 95 N.C. App. 494, 499, 383 S.E.2d 409, 412 (1989); *see also Campbell*, ___ N.C. App. at ___, 846 S.E.2d at 807 (reviewing a *Batson* claim absent a *voir dire* transcript). The transcript of the *Batson* hearing reflects the following details: (1) Defendant's race; (2) Mr. Robinson's race; (3) the absence of any other Black jurors in the jury pool; (4) the number of non-Black jurors passed by the State and the number and percentage of peremptory challenges aimed at Black jurors; (5) the State's proffered reasons for striking Mr. Robinson; and (6) Defendant's arguments and evidence that those reasons revealed racial bias. We are therefore satisfied that the record in this case suffices to permit appellate review.

## C. *Defendant's* Batson *Challenge*

A *Batson* claim is resolved in three stages:

---

200, 394 S.E.2d at 161 (holding a defendant failed to establish the races of prospective jurors on the record when the only evidence was an "affidavit . . . contain[ing] only the perceptions of one of the defendant's lawyers concerning the races of those excused" (citation omitted)); *Brogden*, 329 N.C. at 546, 407 S.E.2d at 166 (holding an affidavit disclosing defendant's counsel's impressions of jurors' races and notations in the record by the court reporter of her impressions was inadequate to establish a reviewable record on appeal).

First, defendant must establish a *prima facie* case that the peremptory challenge was exercised on the basis of race. Second, if such a showing is made, the burden shifts to the prosecutor to offer a racially neutral explanation to rebut defendant's *prima facie* case. Third, the trial court must determine whether the defendant has proven purposeful discrimination.

*State v. Cummings*, 346 N.C. 291, 307-08, 488 S.E.2d 550, 560 (1997) (citations omitted). It is imperative that "the trial court . . . make specific findings of fact at each stage of the *Batson* inquiry that it reaches." *State v. Cofield*, 129 N.C. App. 268, 275, 498 S.E.2d 823, 829 (1998) (citation omitted).

Our Supreme Court has recently explained what the third stage of a *Batson* inquiry requires:

"The trial court must consider the prosecutor's race-neutral explanations in light of all of the relevant facts and circumstances, and in light of the arguments of the parties." *Flowers* [*v. Mississippi*, ___ U.S. ___, ___, 204 L. Ed. 2d 638, 656 (2019)]. At the third step, the trial court "must determine whether the prosecutor's proffered reasons are the actual reasons, or whether the proffered reasons are pretextual and the prosecutor instead exercised peremptory strikes on the basis of race." *Id.* at [___, 204 L. Ed. 2d at 656]. "The ultimate inquiry is whether the State was 'motivated in substantial part by discriminatory intent.'" *Id.* (quoting *Foster v. Chatman*, ___ U.S. ___, 136 S. Ct. 1737, 1754, 193 L. Ed. 2d 1 (2016)).

*Hobbs*, 374 N.C. at 353, 841 S.E.2d at 499. It reiterated that the trial court is "requir[ed] . . . to consider *all of the evidence before it* when determining whether to sustain or overrule a *Batson* challenge." *Id.* at 358, 841 S.E.2d at 502 (citations

omitted) (emphasis added). Thus, "when a defendant presents evidence raising an inference of discrimination, a trial court, and a reviewing appellate court, must consider that evidence in determining whether the defendant has proved purposeful discrimination in the State's use of a peremptory challenge." *Id.* at 356, 841 S.E.2d at 501.

In *Hobbs*, the trial court conducted a complete *Batson* analysis after the defendant's objections to several peremptory strikes by the State. *Id.* at 348, 841 S.E.2d at 496. In the course of his arguments, the defendant pointed to several different factors demonstrating discrimination and indicating pretext in the State's explanation of its peremptory strikes, including a history of racial discrimination in jury selection in the county. *Id.* Our Supreme Court held that the trial court erred in denying the defendant's *Batson* challenge because "the trial court did not explain how it weighed the totality of the circumstances surrounding the prosecution's use of peremptory challenges, including the historical evidence that Mr. Hobbs brought to the trial court's attention." *Id.* at 358, 841 S.E.2d at 502. Mr. Hobbs also argued at trial and on appeal that his *Batson* claim was supported by a comparison between white jurors who had been passed by the State and Black jurors who were peremptorily challenged. *Id.* at 357, 841 S.E.2d at 502. Although the trial court conclusively stated it "'further considered' Mr. Hobbs's arguments in that regard[,]" *id.*, our Supreme Court held that the trial court erred in "failing to engage in a

comparative juror analysis." *Id.* at 360, 841 S.E.2d at 503. This error stemmed in part from the fact that the Court "d[id] not know from the trial court's ruling how or whether these comparisons were evaluated." *Id.* at 359, 841 S.E.2d at 502. Considering these errors together, the Supreme Court held that "[t]he trial court . . . failed to either conduct any meaningful comparative juror analysis or to weigh any of the historical evidence of racial discrimination in jury selection presented by Mr. Hobbs. This failure was erroneous and warrants reversal." *Id.* at 359-60, 841 S.E.2d at 503. As a result, the Supreme Court remanded the matter to the trial court to "conduct a new hearing on these claims." *Id.* at 360, 841 S.E.2d at 503.

Although the trial court did not have the benefit of *Hobbs* when it made its ruling, that decision requires us to remand this case to the trial court to make the findings necessary to resolve a *Batson* claim. Defendant offered several arguments in support of his *Batson* challenge, including a contention that a comparative juror analysis revealed racial bias in the State's decision to strike Mr. Robinson on the grounds of criminal history. As pointed out by Defendant, Mr. Robinson and a white juror passed by the State had prior criminal charges that had been dismissed.[4] Both

---

[4] Read in context, it appears from the transcript that both the State and Defendant agreed that the white juror's drug charges were resolved pursuant to N.C. Gen. Stat. § 90-96 (2019), which provides a procedure for discharging and dismissing a drug charge without adjudication or conviction under certain circumstances. N.C. Gen. Stat. § 90-96(a). While there is no similar outward agreement on the exact disposition of Mr. Robinson's child abuse charge in the record, the prosecutor described it

parties acknowledged that, unlike Mr. Robinson, the white juror's criminal history involved drug charges, which, given Defendant was himself on trial for drug-related offenses, Defendant contended made the prosecutor's decisions all the more suspect. However, we have no indication from the trial court as to "how or whether th[is] comparison[] w[as] evaluated." *Id.* at 359, 841 S.E.2d at 502. The trial court's acknowledgement that "Defendant . . . indicated . . . that another juror had previous drug charges and that he was not excused," coupled with its conclusion "taking into account the various arguments presented [that] the Defendant has not proven purposeful discrimination in the jury selection process," sheds no more light on those questions than the trial court's conclusory statement in *Hobbs* that it had " 'further considered' Mr. Hobbs's [comparative juror] arguments." *Id.* at 357, 841 S.E.2d at 502.[5]

We also hold that the trial court erred in failing to address Defendant's argument that the prosecutor's comments about "tone of voice and those types of

___

as an "allegation" and did not challenge Defendant's assertion that it had been deferred and/or dismissed when attempting to distinguish Mr. Robinson from the purportedly similar white juror. The trial court's findings of fact similarly describe them as "child-abuse allegations" as opposed to a conviction.

[5] The State argues that no comparative juror analysis was required because Mr. Robinson and the white juror passed by the State were too dissimilar to allow for a meaningful comparison. Defendant's comparative juror analysis is, however, at least colorable: "Evidence about similar answers between similarly situated white and nonwhite jurors is relevant to whether the prosecution's stated reasons for exercising a peremptory challenge are mere pretext for racial discrimination. Potential jurors do not need to be identical in every regard for this to be true." *Hobbs*, 374 N.C. at 359, 841 S.E.2d at 502-03 (citations omitted). As explained *supra*, we are unable to discern from its order "how or whether" the trial court considered Defendant's argument in its ultimate determination under the totality of the circumstances. *Id.* at 359, 841 S.E.2d at 502.

issues . . . go to racial stereotypes also." While it is true that the trial court's oral ruling includes Mr. Robinson's "answers and tone of voice" among the prosecutor's reasons for exercising the strike, the oral ruling did not mention Defendant's specific assertion that this reason suggested racial bias. We thus cannot discern how this contention factored into the totality of the circumstances under consideration by the trial court.

To be sure, a juror's demeanor and responses to questioning may be race-neutral reasons for a peremptory challenge sufficient to satisfy the State's burden at the second step of *Batson*. *See State v. Smith*, 328 N.C. 99, 126, 400 S.E.2d 712, 727 (1991) ("[A] prospective juror's nervousness or uncertainty in response to counsel's questions may be a proper basis for a peremptory challenge, absent defendant's showing that the reason given by the State is pretextual."). But such reasons are not immune from scrutiny or implicit bias. *See Batson*, 476 U.S. at 106, 90 L. Ed. 2d at 94 (Marshall, J., concurring) ("A prosecutor's own conscious or unconscious racism may lead him easily to . . . a characterization that would not have come to his mind if a white juror had acted identically."); *Harris v. Hardy*, 680 F.3d 942, 965 (7th Cir. 2012) (observing that "[d]emeanor-based explanations for a strike are particularly susceptible to serving as pretexts for discrimination").[6] When a defendant asserts

[6] The transcript shows that the prosecutor relied on Mr. Robinson's "tone of voice" to justify an assumption that Mr. Robinson had been fired from his last job. However, the prosecutor declined to confirm this assumption by further questioning Mr. Robinson because his "tone of voice" also indicated

that a facially race-neutral reason nonetheless suggests racial bias, a trial court must

consider that assertion under the totality of the circumstances. *See Flowers*, ___ U.S.

at ___, 204 L. Ed. 2d at 656 ("The trial court must consider the prosecutor's race-

neutral explanations in light of all of the relevant facts and circumstances, and in

light of the arguments of the parties."); *Hobbs*, 374 N.C. at 356, 841 S.E.2d at 501

("[W]hen a defendant presents evidence raising an inference of discrimination, a trial

court, and a reviewing appellate court, must consider that evidence in determining

whether the defendant has proved purposeful discrimination in the State's use of a

peremptory challenge.").[7] The trial court must resolve a *Batson* challenge through

"specific findings of fact." *Cofield*, 129 N.C. App. at 275, 498 S.E.2d at 829 (citation

---

to the prosecutor that he would have been embarrassed to discuss it if asked. Though we do not know how the prosecutor questioned other jurors, we agree with Defendant's observation at oral argument that the manner in which prosecutors approach the questioning of a juror may provide race-neutral cover for a biased strike. *Cf. Flowers*, ___ U.S. at ___, 204 L. Ed. 2d at 660-61 ("[D]isparate questioning and investigation of prospective jurors on the basis of race can arm a prosecutor with seemingly race-neutral reasons to strike the prospective jurors of a particular race." (citation omitted)). Just as "[p]rosecutors can decline to seek what they do not want to find about white prospective jurors" to frustrate comparative juror analyses, *id.* at ___, 204 L. Ed. 2d at 661, they can decline a full examination of a Black juror to avoid answers that would foreclose a possible race-neutral rationale to strike. A prosecutor's "legitimate hunches" may be facially valid and satisfy the State's burden at the second step of *Batson*, *Headen*, 206 N.C. App. at 116, 697 S.E.2d at 413 (citation and quotation marks omitted), but they are still subject to rebuttal and review under the totality of the circumstances at the third step. *See Flowers*, ___ U.S. at ___, 204 L. Ed. 2d at 656 ("The trial court must consider the prosecutor's race-neutral explanations in light of all of the relevant facts and circumstances, and in light of the arguments of the parties."); *Hobbs*, 374 N.C. at 359, 841 S.E.2d at 503 (holding that this Court "failed to weigh all the evidence put on by Mr. Hobbs, instead basing its conclusion on the fact that the reasons articulated by the State have, in other cases, been accepted as race-neutral" (citation omitted)).

[7] The totality of the circumstances in this case also includes the questionable assertion by the prosecutor that Mr. Robinson "was just not a reasonable citizen" because he had been unemployed for a year and did not know which university his wife was attending online. *See, e.g., Miller-El v. Cockrell*, 537 U.S. 322, 339, 154 L. Ed. 2d 931, 951 (2003) (observing that assessment of a prosecutor's race-neutral explanations turns in part on "how reasonable, or how improbable, the explanations are").

omitted).  Without findings of fact regarding such a fact-specific issue, appellate review is impossible.  *Id.*  In the absence of necessary findings by the trial court, we must remand.

This case differs materially from earlier cases in which we had no transcript of the *voir dire* and upheld trial courts' denial of *Batson* challenges without further review.  In *Sanders*, for example, the defendant offered no reviewable evidence or argument in response to the State's race-neutral reasons for its strikes, leaving this Court no option but to "accept the State's proffered reasons as rebutting the prima facie case of discrimination."  95 N.C. App. at 502, 383 S.E.2d at 414.  Here, by contrast, Defendant presented to the trial court a comparable juror analysis and cited the prosecutor's use of particular language in justifying his strike as specific evidence to support Defendant's *Batson* challenge.[8]

We are unable to discern from the record how or whether the trial court considered Defendant's comparative juror argument and his contention that the prosecutor's concern about Mr. Robinson's "tone of voice" evinced racial bias.  Because the trial court failed to enter findings regarding these issues, we are bound by *Hobbs*

---

[8] The trial court in *Campbell* resolved the *Batson* claim at the first stage of analysis, leading us to distinguish *Hobbs* in part on that basis.  ___ N.C. App. at ___ n.2, 846 S.E.2d at 808 n.2.  This case is markedly different, as it involves an order entered at the third stage of a *Batson* inquiry—after the State conceded and the trial court found that the evidence established a *prima facie Batson* challenge—that did not specifically address evidence and arguments necessary to resolve a claim at that stage.

to reverse its denial of Defendant's *Batson* challenge. *Hobbs*, 374 N.C. at 358, 841 S.E.2d at 502. We remand the matter to the trial court for further specific findings. *Id.* at 360, 841 S.E.2d at 504. On remand, the trial court may take additional evidence in its discretion, but shall in any event make specific findings of fact under the totality of *all* the circumstances at the third step of its *Batson* analysis, including, but not limited to, findings: (1) disclosing how or whether a comparative juror analysis was conducted; and (2) addressing Defendant's assertion that the prosecutor's statements regarding Defendant's answers and tone of voice evinced racial bias.

In sum, our review of Defendant's appeal is controlled by recent United States and North Carolina Supreme Court decisions not available to the lower court at the time of trial. *Flowers*, ___ U.S. ___, 204 L. Ed. 2d 638; *Hobbs*, 374 N.C. 345, 841 S.E.2d 492. The trial court can hardly be blamed for failing to follow guidance that did not exist at the time of Defendant's *Batson* challenge. But a high court's decision applying federal constitutional law to a criminal judgment controls cases pending on appeal when that decision is announced. *See Whorton v. Bockting*, 549 U.S. 406, 416, 167 L. Ed. 2d 1, 11 (2007) (noting that decisions on constitutional law governing criminal judgments apply to cases pending "on direct review" (citation omitted)); *State v. Zuniga*, 336 N.C. 508, 513, 444 S.E.2d 443, 446 (1994) ("[A]vert[ing] to . . . federal retroactivity standards" in application of federal constitutional decisions (citations omitted)).

*D. Assessment of Costs*

Defendant asserts the trial court's assessment of costs in each of the four judgments against him violates N.C. Gen. Stat. § 7A-304 as interpreted by *State v. Rieger*, ___ N.C. App. ___, 833 S.E.2d 699 (2019), and the State "acknowledges" *Rieger*'s interpretation of the statute. The statute provides for costs to be assessed "[i]n every criminal case," N.C. Gen. Stat. § 7A-304(a) (2019), and we have interpreted a single "criminal case" to encompass "multiple criminal charges aris[ing] from the same underlying event or transaction . . . adjudicated together in the same hearing or trial[.] . . . In this situation, the trial court may assess costs only once, even if the case involves multiple charges that result in multiple, separate judgments." *Rieger*, ___ N.C. App. at ___, 833 S.E.2d at 703. We adopted the interpretation in *Rieger* because "the intent of the General Assembly when it chose to require costs 'in every criminal case' was to have those costs be proportional to the costs that this 'criminal case' imposed on the court system." *Id.*

Here, the State moved to join all of Defendant's charges for trial on the basis that "the offenses are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan." That order was granted by the trial court without objection from Defendant, and all of the charges were heard in a single three-day trial. We see no difficulty in applying the rationale and rule announced in *Rieger* to these procedural facts, and the State's

brief offers no substantive argument to support a deviation. As a result, we vacate the trial court's judgments so it may enter a new judgment in Case No. 17CRS050312 that assesses costs and new judgments in Case Nos. 17CRS050313-15 that do not.

### III. <u>CONCLUSION</u>

We hold that in its ruling denying Defendant's objection to the State's peremptory strike of Mr. Robinson, the trial court failed to satisfy the constitutional requirements mandated by the North Carolina Supreme Court. On remand, the trial court must make specific findings as to all the pertinent evidence and arguments, including findings addressing Defendant's comparative juror analysis and "tone of voice" arguments. Once those findings are made, the trial court must "explain how it weighed the totality of the circumstances surrounding the prosecution's use of peremptory challenges." *Hobbs*, 374 N.C. at 358, 841 S.E.2d at 502. The trial court may, in its discretion, undertake any evidentiary procedures it deems necessary to comply with our mandate. Should it rule in Defendant's favor on his *Batson* challenge, Defendant shall receive a new trial. *See State v. Wright*, 189 N.C. App. 346, 354, 658 S.E.2d 60, 65 (2008) (granting a new trial on a *Batson* challenge).

We also vacate Defendant's judgments assessing costs inconsistent with *Rieger*. Should the trial court again reject Defendant's *Batson* claim, it shall enter a new judgment in Case No. 17CRS050312 that assesses court costs and new judgments in Case Nos. 17CRS050313-15 that do not.

REVERSED AND REMANDED IN PART; VACATED AND REMANDED IN PART.

Judges BRYANT and HAMPSON concur.